FILED
COURT OF APPEALS
DIVISION II

2014 FEB 11 AM 8: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43878-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| FRED HENRY CARPENTER IV, | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Fred Henry Carpenter IV guilty of two counts of second degree assault, two counts of felony harassment, one count of fourth degree assault, and one count of obstruction of a law enforcement officer. The jury also returned special verdicts finding that Carpenter's crimes of second degree assault and felony harassment were aggravated domestic violence offenses. Carpenter appeals his convictions of obstruction of a law enforcement officer and felony harassment, asserting that the State's information was defective (1) for failing to allege as an element of obstruction of a law enforcement officer that he knew that the law enforcement officer was discharging official duties at the time he committed the offense and (2) for failing to allege as an element of felony harassment that he had expressed a "true threat."

In his statement of additional grounds for review, Carpenter appears to challenge all of his convictions and his sentence, asserting that (1) his convictions for second degree assault and felony harassment against Amanda Sreap violated his right to be free from double jeopardy, (2) his convictions for fourth degree assault and felony harassment against Kerrie Dolinski violated his right to be free from double jeopardy, (3) his convictions for two counts of second degree

assault against Sreap violated his right to be free from double jeopardy, (4) the trial court erred by admitting certain evidence at trial, (5) the trial court imposed an improper exceptional sentence, (6) the prosecutor committed misconduct by leading a witness and by making an improper closing argument, (7) the trial court erred by providing the jury with an incomplete jury instruction, and (8) the trial court erred by not instructing the jury on the lesser-included offense of third degree assault. Additionally, in his statement of additional grounds Carpenter contends that his counsel was ineffective for (9) not allowing him to testify in his defense, (10) not making an opening statement, (11) failing to present a defense, (12) failing to present an intoxication defense, (13) failing to conduct any research or investigation before trial, (14) failing to pursue a plea deal on the last day of trial, (15) failing to inform him before trial about the possibility that he could receive an exceptional sentence, (16) inadequate cross-examination of witnesses, (17) failing to object to the admission of a recorded 911 call, (18) requesting a high-end standard range sentence, and (19) conceding the fact of guilt at sentencing. Finally, Carpenter raises a number of issues in his statement of additional grounds that we cannot address in this appeal because they either ask us to re-weigh the evidence and evaluate the credibility of witnesses or refer to matters outside the trial record. Because the State's charging documents were constitutionally sufficient and arguments in Carpenter's statement lack merit, we affirm his convictions and sentence.

FACTS

In June 2012, Carpenter was living with his ex-girlfriend, Dolinski, and her three children at Dolinski's home in Thurston County. Carpenter is the father of Dolinski's oldest son, FC, who was then 14 years old.[1]

On June 9, 2012, Carpenter, Dolinski, and Carpenter's girlfriend, Sreap, consumed two bottles of liquor at Dolinski's home. Later that evening, Carpenter and Sreap began arguing and Dolinski saw Carpenter grab Sreap by her throat several times. On one occasion, Carpenter grabbed Sreap's throat, lifted her off the ground, and then threw her across a bed. Carpenter started yelling at Dolinski to leave the room and continued to choke Sreap several more times. After Sreap's body became limp, Carpenter slapped her and said, "[Q]uit faking it." Report of Proceedings (RP) at 52. When Sreap tried to defend herself, Carpenter got her down on the floor and grabbed her neck so she could neither breathe nor move. Then, as Carpenter started to leave the room, he said, "I'm just going to kill you both. I'm going to get a knife." RP at 54. Dolinski believed that Carpenter intended to retrieve a knife and kill her and Sreap. At some point, Carpenter grabbed Dolinski by the neck and threw her against a wall.

FC and his younger brother were in the home when this occurred. FC saw Carpenter screaming at Sreap, and then saw Carpenter hit her across the face, lift her off the ground by her throat, and throw her across a bed. He also saw Dolinski trying to stop Carpenter from choking Sreap. FC stated that he saw Carpenter choking Sreap at least five times that evening.

---

[1] We use the juvenile's initials to protect his interest in privacy.

Dolinski's brother, Brandon Stevens, arrived at Dolinski's home that evening and saw Carpenter choking Sreap. After pulling Carpenter away from Sreap and calming him down, Stevens instructed his nephews to leave the house and go to his vehicle. When Stevens returned to the room, he saw Carpenter on top of Sreap, choking her while she gasped for air. Carpenter got off of Sreap after Stevens yelled at him. When Carpenter started "freaking out" again, Stevens left the house out of fear for his nephews' safety and the safety of his two infant children, who were waiting in the vehicle with their mother. RP at 95-97. As the group drove away from Dolinski's house, FC called 911.

Thurston County sheriff's deputies Michael Brooks and Randy Hovda responded in full police uniform and, once at the front door, heard arguing inside of Dolinski's home. When Brooks and Hovda entered the home, they saw Carpenter, Dolinski, and Sreap walking toward the front door. When Carpenter attempted to walk past Brooks, Brooks put his hand up and said, "Hold on a second." RP at 193. Carpenter pushed Brooks's chest and then started running. Brooks deployed his Taser on Carpenter, but it did not subdue him; Carpenter yelled, went in the master bedroom, and slammed the door shut. After Brooks kicked the door down, both officers unsuccessfully attempted to subdue Carpenter with their Tasers while he ran out of the house. The officers chased Carpenter around the home for about 50-70 yards while instructing him to stop. When Carpenter tensed up like he was going to fight the officers, Brooks struck him three times with a baton. Hovda pepper sprayed Carpenter but he continued to refuse the officers' orders to lie on the ground. After a third officer arrived and pepper sprayed Carpenter, Brooks was able to handcuff him. After being handcuffed Carpenter continued to try to get up until a fourth officer tased him.

4

After detaining Carpenter and summoning medical aid, Brooks went in the home to speak to Dolinski and Sreap. When speaking with Sreap, he noticed that she had a raspy voice and redness on her neck; Sreap told Brooks that her neck hurt and that she was having trouble swallowing. Sreap was transported to a hospital where Brooks later took a taped statement from her. In her taped statement, Sreap told Brooks that Carpenter had strangled her and that she had trouble breathing while he was strangling her.

On June 13, 2012, the State charged Carpenter with two counts of second degree assault and one count of felony harassment for his conduct against Sreap, with each charge alleging a domestic violence aggravating factor.[2] The State also charged Carpenter with a second count of felony harassment and one count of fourth degree assault for his conduct against Dolinski, with the felony harassment charge alleging a domestic violence aggravating factor. Additionally, the State charged Carpenter with obstructing a law enforcement officer. The State's information for obstructing a law enforcement officer stated:

> In that the defendant, FRED HENRY CARPENTER, IV, State of Washington, on or about June 9, 2012, did willfully hinder, delay, or obstruct any law enforcement officer in the discharge of his or her official powers or duties.

Clerk's Papers (CP) at 5, 20.

The State's information for felony harassment against Dolinski[3] stated:

---

[2] On August 21, 2012, the State filed an amended information to correct a misspelling in Sreap's middle name. Apart from the correction of Sreap's middle name, the State's June 13 information and August 21 amended information are identical.

[3] Apart from replacing Dolinski's name with Sreap's name, the State's information for felony harassment against Sreap mirrors the language of the information for felony harassment against Dolinski.

> In that the defendant, FRED HENRY CARPENTER, IV, in the State of Washington, on or about June 9, 2012, without lawful authority, knowingly threatened to kill Kerrie M. Dolinski, a family or household member, pursuant to RCW 10.99.020, and the defendant's words or conduct placed Kerrie M. Dolinski in reasonable fear that the threat would be carried out. It is further alleged that the current offense involved Domestic Violence as defined in RCW 10.99.020 and the offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years.

CP at 5, 20.

At trial, Sreap testified that she did not remember getting into any argument with Carpenter, did not remember telling Brooks that Carpenter had strangled her and, although she remembered giving a taped statement, she was still in shock and was intoxicated when she gave the statement. When the State confronted Sreap with a specific statement that she had provided to Brooks in her taped statement, Carpenter objected on the basis of leading the witness. After the trial court overruled the objection, the State continued to ask Sreap about specific statements that she had given to Brooks, but Sreap stated that she could not remember giving any of those statements. Carpenter again objected and the trial court held a sidebar conference off the record and outside the presence of the jury, at which the trial court overruled Carpenter's objection. The trial court later put on the record its reasons for overruling Carpenter's objection, stating:

> Counsel, at the last session there was a side bar conference following [defense counsel's] objections to questions about statements allegedly made by the witness. At side bar I inquired of the deputy prosecuting attorney whether she intended to have one of the investigating deputies testify that the witness did make those statements. The deputy prosecutor answered "yes."
>
> I indicated that I would sustain the objection to any question that the plaintiff could not bring in a—where the plaintiff could not bring in a deputy to testify about the statement but that I would overrule the objection as to all such statements in order to permit the Plaintiff to lay a foundation for asking the deputies statements made by the witness which might otherwise be hearsay. I was assured that the plaintiff would only ask those questions.

RP at 136. The State later called Brooks to testify about the statements that Sreap provided in her taped statement. The trial court admitted a transcript of Sreap's taped statement over defense objection. The trial court also admitted, without objection, a recording of FC's 911 call. The recording was played to the jury without objection.

After the State rested, Carpenter's defense counsel declined to present any evidence. The trial court instructed the jury on fourth degree assault as a lesser-included offense to Carpenter's second degree assault charges. The jury found Carpenter guilty of two counts of second degree assault, two counts of felony harassment, one count of fourth degree assault, and one count of obstruction of a law enforcement officer. The jury also found domestic violence aggravating factors with regard to Carpenter's second degree assault and felony harassment offenses. Carpenter timely appeals.

## ANALYSIS

### I. THE INFORMATION'S CHARGE OF OBSTRUCTING A LAW ENFORCEMENT OFFICER

Carpenter first contends that the State's information charging him with obstructing a law enforcement officer was constitutionally deficient because it failed to allege as an essential element that he had knowledge that the law enforcement officer was discharging official duties at the time he committed the offense. We hold that the State's information fairly implied all the essential elements to Carpenter's charge of obstructing a law enforcement officer and that Carpenter neither alleged nor showed any prejudice from any inartful language contained in the State's information. Accordingly, we hold that the State's charging document was constitutionally sufficient with regard to Carpenter's obstructing a law enforcement officer charge.

Both the United States Constitution and the Washington State Constitution require that the State plead in its information all essential elements, whether statutory or nonstatutory, of the crimes charged. *State v. Allen*, 176 Wn.2d 611, 627 n.10, 294 P.3d 679 (2013). Where, as here, a criminal defendant challenges the sufficiency of a charging document for the first time on appeal, we construe the documents liberally in favor of validity. *State v. Kjorsvik*, 117 Wn.2d 93, 105, 812 P.2d 86 (1991). Liberal construction "'permits us to fairly infer the apparent missing element from the charging document's language.'" *State v. Zillyette*, 178 Wn.2d 153, 161, 307 P.3d 712 (2013) (quoting *State v. Goodman*, 150 Wn.2d 774, 788, 83 P.3d 410 (2004)). In liberally construing the information we apply the following two-part test:

> (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so [and if the language in the charging document is vague], (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?

*Kjorsvik*, 117 Wn.2d at 105-06. The first prong of this test rests solely on the language on the face of the charging document. *Kjorsvik*, 117 Wn.2d at 105-06. We read the charging document "as a whole, according to common sense and including facts that are implied." *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010). The second prong allows us to consider whether the defendant received actual notice. *Kjorsvik*, 117 Wn.2d at 106. In evaluating whether the defendant suffered prejudice, we may consider the certificate of probable cause. *See Kjorsvik*, 117 Wn.2d at 111.

The statute defining the crime of obstructing a law enforcement officer, RCW 9A.76.020, provides, "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." In addition to the statutory elements of obstructing a law enforcement officer,

8

the State must prove beyond a reasonable doubt that the accused knew the law enforcement officer was discharging official powers or duties at the time of the offense. *State v. Contreras*, 92 Wn. App. 307, 315-16, 966 P.2d 915 (1998). Thus, knowledge of this fact is also an essential element that must be alleged by fair construction in the charging document.

Here, the State's information mirrored the language of RCW 9A.76.020, alleging that Carpenter "willfully" obstructed an officer in the performance of official duties. The issue is whether the statutory term "willfully" fairly implies an allegation that the defendant knew the law enforcement officer was discharging official powers or duties at the time, as required by *Contreras*.

> RCW 9A.08.010 does not contain a definition for "willfully," but instead provides:
>
> (4) Requirement of Wil[l]fulness Satisfied by Acting Knowingly. A requirement that an offense be committed wil[l]fully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears.

Our question, though, is the converse: whether a requirement of knowledge is satisfied by acting willfully. As a matter of logic, the converse of a true statement is not itself necessarily true.

The information, again, alleged that Carpenter "did willfully . . . obstruct any law enforcement officer in the discharge of his or her official powers or duties." CP at 5, 20. One could willfully obstruct an individual without knowing he or she was an officer carrying out official duties. It would be difficult to say, though, that one willfully obstructed an officer in the discharge of official duties if one had no knowledge that the person was either an officer or carrying out official duties. Thus, engaging in the required liberal construction, we hold that the knowledge required by *Contreras* is fairly implied by the allegation in the charging document that he "did willfully . . . obstruct any

9

law enforcement officer in the discharge of his or her official powers or duties." It would have been far better practice, though, to include an explicit allegation of knowledge in the document.

Turning to the prejudice prong, Carpenter does not contend that any inartful language in the State's information caused him to lack actual notice of the essential elements of obstruction of a law enforcement officer. Therefore, he has failed to allege, much less show, that he suffered actual prejudice from the inartful language. Accordingly, Carpenter fails to demonstrate any prejudice resulting from the State's information charging him with obstruction of a law enforcement officer.

A liberal reading of the State's charging document informed Carpenter of the essential elements of obstruction of a law enforcement officer. Further, he does not claim any prejudice from the absence of an express allegation of knowledge in the charging document. For each reason, he fails to show that the charging document was constitutionally insufficient on this ground.

## II. THE INFORMATION'S CHARGE OF FELONY HARASSMENT

Carpenter next contends that the State's information charging him with two counts of felony harassment was constitutionally deficient for failing to allege as an essential element that he had expressed a "true threat." Because the "true threat" requirement is not an essential element of the felony harassment statute and need not be included in the State's charging documents, we disagree.

In First Amendment law, a "true threat" is

> "a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious

expression of intention to inflict bodily harm upon or to take the life of another person."

*Allen*, 176 Wn.2d at 626 (quoting *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)) (alteration in original). First Amendment free speech protections do not extend to "true threats." *Allen*, 176 Wn.2d at 626.

Carpenter argues that we should reverse his felony harassment convictions because the "true threat" requirement is an essential element of that crime and the State failed to allege it in its charging documents. However, our Supreme Court recently rejected this argument, holding that, "[w]e have never held the true threat requirement to be an essential element of a harassment statute." *Allen*, 176 Wn.2d at 628. The *Allen* court clarified the scope of the "true threat" requirement, stating, (1) "'the constitutional concept of 'true threat' merely defines and limits the scope of the essential threat element in the felony . . . harassment statute and is not itself an essential element of the crime'"; (2) because the "true threat" requirement is merely definitional and is not an essential element of the crime, it is not an "error" if the true threat requirement is not included in the charging documents or in the "to convict" instructions; and (3) "so long as the jury [is] instructed as to the true threat requirement, the defendant's First Amendment rights [are] protected." *Allen*, 176 Wn.2d at 628-30 (quoting *State v. Tellez*, 141 Wn. App. 479, 484, 170 P.3d 75 (2007)).

*Allen* controls our decision. As in *Allen*, the State's charging documents did not allege that the defendant's statements were true threats. However, the trial court here provided the jury with an instruction that explained the "true threat" requirement, which instruction was identical to the instruction that our Supreme Court had approved in *Allen*. This instruction stated in part:

11

[t]o be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

CP at 39; *see Allen*, 176 Wn.2d at 628.

Just as this language in the jury instructions protected Allen's First Amendment rights, it also protected Carpenter's First Amendment rights. Because the "true threat" requirement is not an essential element of felony harassment, we hold that the State's charging documents were not constitutionally deficient for failing to allege it.

### III. STATEMENT OF ADDITIONAL GROUNDS (SAG) ISSUES

#### A.    Double Jeopardy

In his SAG, Carpenter first asserts that some of his convictions violate the constitutional prohibition against double jeopardy. We disagree.

Whether Carpenter's convictions violate double jeopardy is a question of law that we review de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). Both our federal and state constitutions prohibit "'being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense.'" *State v. Turner*, 169 Wn.2d 448, 454, 238 P.3d 461 (2010) (quoting *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006)); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Carpenter's arguments on appeal implicate the third prohibition, in that he contends the trial court punished him multiple times for the same offense.

When analyzing a double jeopardy claim, we ask whether the legislature intended the charged crimes to constitute the same offense. *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). *Freeman* sets out a four-part framework for analyzing these claims. 153 Wn.2d at

12

771-73. First, we look to express or implicit legislative intent to punish the crimes separately; if legislative intent is clear, we look no further. *Freeman*, 153 Wn.2d at 771-72. Second, if the legislature has not clearly stated its intent, we may apply the "same evidence" test to the charged offenses.[4] *Freeman*, 153 Wn.2d at 772. Third, we may use the merger doctrine to discern legislative intent. *Freeman*, 153 Wn.2d at 772-73. Finally, if the two offenses appear to be the same but each one has an independent purpose or effect, then the two offenses may be punished separately. *Freeman*, 153 Wn.2d at 773.

1. Felony Harassment and Second Degree Assault

Carpenter contends that he was unlawfully placed in double jeopardy when the jury convicted him of both felony harassment and second degree assault against Sreap, because the felony harassment conviction was incidental to the second degree assault conviction. We disagree. The felony harassment statute, RCW 9A.46.020, provides in relevant part:

> (1) A person is guilty of harassment if:
> (a) Without lawful authority, the person knowingly threatens:
> (i) To cause bodily injury immediately or in the future to the person threatened or to any other person;
> . . .
> (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.
> . . . .
> [2] (b) A person who harasses another is guilty of a class C felony if any of the following apply: . . . (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.

The second degree assault statute, RCW 9A.36.021, provides in relevant part:

---

[4] Washington's "same evidence" test is sometimes referred to as the "same elements" test or "the *Blockburger*" test. *Freeman*, 153 Wn.2d at 772 (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

13

(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

. . . .

(g) Assaults another by strangulation or suffocation.

Because the felony harassment and second degree assault statutes do not clearly disclose whether separate punishments are authorized for the same conduct, we turn to the same evidence test to determine whether Carpenter's convictions violated the constitutional prohibition against double jeopardy. *See, e.g., State v. Leming*, 133 Wn. App. 875, 888, 138 P.3d 1095 (2006). Under the same evidence test, if each offense contains an element not contained in the other offense, the offenses are different for double jeopardy purposes. *State v. Jackman*, 156 Wn.2d 736, 747, 132 P.3d 136 (2006). The same evidence test requires that we determine "'whether each provision requires proof of a fact which the other does not.'" *State v. Baldwin*, 150 Wn.2d 448, 455, 78 P.3d 1005 (2003) (quoting *Blockburger*, 284 U.S. at 304).

To prove felony harassment against Sreap as charged, the State had to prove beyond a reasonable doubt that Carpenter (1) without lawful authority (2) knowingly threatened to kill Sreap and (3) by his words or conduct, placed Sreap in reasonable fear that his threat would be carried out. RCW 9A.46.020(2)(b)(ii). In contrast, to prove second degree assault as charged, the State had to prove beyond a reasonable doubt that Carpenter assaulted Sreap by suffocation or strangulation. RCW 9A.36.021(1)(g). Each crime required proof of a fact that the other did not. Therefore, under the same evidence test Carpenter's convictions for felony harassment and second degree assault did not offend the prohibition against double jeopardy.

2. Felony Harassment and Fourth Degree Assault

Next, Carpenter asserts that his convictions for fourth degree assault and felony harassment against Dolinski violate the prohibition against double jeopardy. Again, we disagree.

14

In contrast with evidence of Carpenter's threat to kill, as required to prove his felony harassment charge, to prove fourth degree assault the State was required to prove only that Carpenter had assaulted Dolinski. RCW 9A.36.040. Accordingly, under the same evidence test, Carpenter has failed to demonstrate that his fourth degree assault and felony harassment convictions against Dolinski violated the constitutional prohibition against double jeopardy.

Carpenter also appears to argue that the trial court erred by failing to treat his fourth degree assault and felony harassment convictions as the same criminal conduct for sentencing purposes. We disagree. We review for an abuse of discretion a trial court's finding that offenses did not constitute the same criminal conduct. *State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994). To constitute the same criminal conduct, Carpenter's offenses must have had the same criminal intent, been committed at the same time and place, and involve the same victim. *State v. Davis*, 174 Wn. App. 623, 641, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013). Here, Carpenter's convictions for fourth degree assault and felony harassment against Dolinski did not involve the same criminal intent and, thus, the trial court did not abuse its discretion by counting each crime separately for sentencing purposes. To convict Carpenter for felony harassment, the State was required to prove that he *knowingly* threatened to kill Dolinski whereas, to convict Carpenter for fourth degree assault, the State was required to prove that he *intended* to assault her. RCW 9A.46.020(2)(b)(ii); RCW 9A.36.040; *see, e.g., State v. Davis*, 119 Wn.2d 657, 662, 835 P.2d 1039 (1992) (crime of fourth degree assault contained court-implied element of intent). Accordingly, the trial court properly treated Carpenter's convictions for fourth degree assault and felony harassment against Dolinski separately for sentencing purposes.

15

3. Second Degree Assault

Carpenter next asserts that the State violated his right to be free from double jeopardy by charging him with multiple counts of second degree assault, which the trial court later found to constitute the same criminal conduct. But Carpenter misconstrues the constitutional prohibition against double jeopardy as it neither bars the State from bringing, nor bars the jury from considering, "multiple charges arising from the same criminal conduct in a single proceeding." *Freeman*, 153 Wn.2d at 770-71. Accordingly, he cannot demonstrate that the State violated the prohibition against double jeopardy by charging him with multiple counts of second degree assault.

B.    Evidentiary Rulings

Next, Carpenter appears to challenge two of the trial court's evidentiary rulings, but his briefing on these alleged errors is insufficient to merit judicial review. First, Carpenter asserts that the trial court improperly admitted evidence when it overruled his objection based on the State leading a witness. Although, Carpenter recites in his SAG brief a portion of the trial record showing that the trial court had overruled his objection based on leading the witness, he fails to explain how the trial court's ruling was in error. Accordingly, his brief fails to inform us of the nature of his alleged error and, thus, we do not consider it further. RAP 10.10(c).[5]

Carpenter also asserts that the trial court improperly admitted evidence when it allowed Brooks to refer to a transcript of Sreap's taped statements during his testimony to impeach

---

[5] Although RAP 10.10 does not require Carpenter to refer to the record or to cite to applicable authority in his SAG, he is required to inform us of the "nature and occurrence of alleged errors." RAP 10.10(c).

Sreap's earlier testimony.[6]  Again, Carpenter's brief fails to explain how the trial court erred in this regard and, accordingly, we do not address the issue further.  RAP 10.10(c).

C.     Exceptional Sentence

Next, Carpenter asserts that the trial court erred by imposing an exceptional sentence. Specifically, he appears to argue that sufficient evidence did not support the jury finding that he committed his offenses within the sight or sound of the defendant's minor child.

As noted, there was ample evidence of this nature showing that FC saw Carpenter screaming at Sreap, hitting her across the face, lifting her off the ground by her throat, and throwing her across a bed.  FC stated that he saw Carpenter choking Sreap at least five times that evening.  Accordingly, Carpenter fails to show that the trial court erred by imposing a sentencing aggravator on this basis.

D.     Prosecutorial Misconduct

Next, Carpenter asserts that the prosecutor committed misconduct by leading a witness and by making an improper argument at closing.  We disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice.  *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).  Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict.  *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).  Because Carpenter did not object on the

---

[6] Moreover, contrary to Carpenter's assertion in his SAG, he did not object to Brooks referencing the transcript of Sreap's taped statement during his testimony.  Instead, he objected to the admission of the taped statement transcript, arguing that Brooks's testimony had been sufficient to impeach Sreap.  Because Carpenter did not object to the testimony that he now complains of on appeal and does not assert that the alleged error was a "manifest error affecting a constitutional right," we also decline to address this issue under RAP 2.5(a).

basis of prosecutorial misconduct below, we must ascertain whether the prosecutor's misconduct was "so flagrant or ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). Under this heightened standard of review, Carpenter has the burden to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

In analyzing a prosecutorial misconduct claim, we "focus less on whether the prosecutor's misconduct was flagrant and ill-intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. "'The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" *Emery*, 174 Wn.2d at 762 (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932).

Carpenter fails to meet his burden of establishing prosecutorial misconduct. With regard to his claim that the prosecutor committed misconduct by improperly leading a witness, Carpenter does not demonstrate that the prosecutor acted improperly. Rather, the trial record shows that the prosecution was laying a foundation to admit prior inconsistent statements of the witness, Sreap, after she testified that she did not recall stating that Carpenter had strangled her during an argument and that her neck had been sore. ER 801(d)(1). Because Carpenter fails to demonstrate that the prosecutor acted improperly when it questioned Sreap about her prior inconsistent statements, we hold that he fails to show prosecutorial misconduct on this ground.

18

Carpenter similarly fails to show any improper conduct with regard to his claim that the prosecutor committed misconduct at closing. Carpenter asserts that the prosecutor committed misconduct at closing by referring to FC's 911 call without pointing out to the jury that other voices could be heard in the background of the taped recording. However, we can discern no improper conduct from the prosecution's decision to highlight in this manner certain portions of the evidence presented at trial over other portions of the evidence. Accordingly, we hold that Carpenter has failed to establish prosecutorial misconduct on this ground.

E.    Jury Instructions

Next, Carpenter contends that the trial court erred by providing the jury with an incomplete instruction defining "assault" because the instruction did not include the term "without lawful authority." However, Carpenter did not object to the trial court's instruction below and does not claim on appeal that the alleged error was a manifest error affecting a constitutional right. Accordingly, we decline to address this issue for the first time on appeal under RAP 2.5(a).

Carpenter also contends that the trial court erred by failing to instruct the jury on third degree assault as a lesser included offense to second degree assault. Again, Carpenter raises this claim for the first time on appeal. Again, the claimed error, a trial court's failure to instruct on a lesser included offense, is not a manifest error affecting a constitutional right. *State v. O'Hara*, 167 Wn.2d 91, 101, 217 P.3d 756 (2009). Accordingly, we decline to address this issue for the first time on appeal under RAP 2.5(a).

Moreover, even if this claim were properly before us, it lacks merit. Jury instructions are sufficient if they allow the parties to argue their theory of the case and, when read as a whole,

19

properly inform the jury of the applicable law. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). "A lesser included offense instruction is proper only if each element of the lesser offense is necessarily included in the charged offense and 'there is sufficient evidence to support an inference that the lesser crime was committed.'" *State v. Charles*, 126 Wn.2d 353, 355, 894 P.2d 558 (1995) (quoting *State v. Speece*, 115 Wn.2d 360, 362, 798 P.2d 294 (1990)). Here, sufficient evidence does not support an inference that Carpenter committed third degree assault. The third degree assault statute, former RCW 9A.36.031(1)(b)-(c), (e), (g), (i)-(j) (2011), criminalizes assault committed against certain individuals while performing official duties, such as transit operators, school bus drivers, firefighters, law enforcement officers, health care providers, and judicial officers. There was no evidence presented at trial that Carpenter had committed assault against any of these classes of individuals while performing his or her official duties. In addition, the third degree statute criminalizes other forms of assault not present in Carpenter's case. *See* RCW 9A.36.031(1)(a), (d), (f), (h), (k). Because sufficient evidence did not support the trial court instructing the jury on third degree assault as a lesser included offense to second degree assault, Carpenter's claim fails.

F.    Ineffective Assistance of Counsel

Next, Carpenter raises in his SAG several claims of ineffective assistance of counsel. We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, Carpenter must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Performance is deficient

if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results if the outcome of the trial would have been different had defense counsel not rendered deficient performance. *McFarland*, 127 Wn.2d at 337. We strongly presume that counsel is effective and the defendant must show the absence of any legitimate strategic or tactical reason supporting defense counsel's actions. *McFarland*, 127 Wn.2d at 337. To rebut this presumption, the defendant bears the heavy burden of "establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

1. Refusal to Allow Carpenter to Testify in His Defense

Carpenter first asserts that his counsel was ineffective for refusing to call him as a witness to testify in his defense. There is no support in the record, however, that defense counsel refused, against Carpenter's wishes, to call him as a defense witness. We cannot address on direct appeal allegations that refer to matters outside the record on review. *McFarland*, 127 Wn.2d at 335 (where ineffective assistance of counsel claim is brought on direct appeal, reviewing court will not consider matters outside the record; a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record). Accordingly, we do not further address this issue.

2. Failure to Give Opening Statement

Next, Carpenter asserts that defense counsel was ineffective for failing to give an opening statement to the jury. Defense counsel's decision to forgo giving an opening statement, though, appears to be a legitimate tactical decision and, therefore, cannot form the basis for an ineffective

assistance of counsel claim. *McFarland*, 127 Wn.2d at 336. Accordingly, Carpenter fails to show ineffective assistance on this ground.

### 3. Failure to Present a Defense

Next, Carpenter asserts that his counsel was ineffective for failing to present any defense at trial. Although defense counsel did not present any evidence, the record shows that counsel cross-examined all but one of the State's witnesses and that counsel made a closing argument. More importantly, Carpenter does not point to any specific witnesses or documentary evidence that his defense counsel should have presented at trial and, thus, he cannot show any prejudice from his counsel's decision to rest at the close of the State's case.

Moreover, it appears that defense counsel made a tactical decision to base its case on the State's inability to carry its burden of proving all charged crimes beyond a reasonable doubt. Thus, defense counsel had no duty to introduce evidence of Carpenter's innocence, since he already benefitted from that fundamental presumption. *See State v. Crediford*, 130 Wn.2d 747, 759, 927 P.2d 1129 (1996). Such tactical decisions cannot form the basis for an ineffective assistance of counsel claim. *McFarland*, 127 Wn.2d at 336. Accordingly, Carpenter fails to show ineffective assistance on this ground.

### 4. Failure to Present Intoxication Defense

Next, Carpenter asserts that his counsel was ineffective for failing to present an intoxication defense. We disagree. To be entitled to a voluntary intoxication jury instruction, Carpenter must present evidence that the drinking affected his ability to form a requisite mental state. *State v. Everybodytalksabout*, 145 Wn.2d 456, 479, 39 P.3d 294 (2004). The evidence "must reasonably and logically connect the defendant's intoxication with the asserted inability to

22

form the required level of culpability to commit the crime charged." *State v. Gabryschak*, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996). Evidence of drinking, standing alone, is insufficient to warrant the giving of a voluntary intoxication jury instruction; there must be substantial evidence of the alcohol's effect on the defendant's mind and body. *Gabryschak*, 83 Wn. App. at 253; *see also State v. Finley*, 97 Wn. App. 129, 135, 982 P.2d 681 (1999) ("[T]he court is required to give a voluntary intoxication instruction only in those cases in which the level of mental impairment caused by alcohol or drugs clearly affected the defendant's criminal responsibility by eliminating the necessary mens rea.").

On this record, Carpenter cannot show that his counsel was ineffective for failing to request a voluntary intoxication instruction. The evidence, while showing that Carpenter had been drinking on the day he committed his offenses, did not show that his drinking impaired his mind and body to the point that it negated the required mens rea to support his convictions. Further, to the extent that Carpenter is arguing that his defense counsel failed to present evidence to support the giving of the instruction, this concerns matters outside the record, which we cannot address in his direct appeal. Accordingly, Carpenter fails to establish ineffective assistance on this ground.

5. Failure to Investigate/Failure to Pursue Plea Deal/Failure to Inform about Exceptional Sentence

Next, Carpenter asserts that his counsel was ineffective for failing to investigate his case before trial, for failing to pursue a plea deal on the last day of trial, and failing to inform him before trial about the possibility of an exceptional sentence. However, there is no evidence in the

23

record to support any of these assertions, and we do not address matters outside the record on direct review. *McFarland*, 127 Wn.2d at 335.

### 6. Inadequate Cross-Examination

Next, Carpenter asserts that his trial counsel was ineffective for failing to adequately cross-examine witnesses. Specifically, Carpenter argues that he presented defense counsel with proof that witnesses were lying on the stand, but that defense counsel declined to confront witnesses in the manner that Carpenter suggested. But the manner in which defense counsel cross-examines witnesses is generally a matter of judgment and strategy that cannot support the basis for an ineffective assistance of counsel claim. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004); *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). Here, Carpenter fails to establish that defense counsel's strategy with regard to cross examination of witnesses was illegitimate and, thus, he cannot show ineffective assistance on this ground.

### 7. Failure to Object to Admission of 911 Recording

Next, Carpenter asserts that his counsel was ineffective for failing to object to the admission of the 911 recording. Carpenter, though, fails to explain on what ground such an objection could have been sustained. Accordingly, he fails to show prejudice resulting from counsel's failure to object to the tape's admission.

### 8. Request for High-End Standard Range Sentence

Next, Carpenter asserts that his defense counsel was ineffective for requesting a high-end standard range sentence of 80 months of incarceration. Again, defense counsel's decision in this regard appears to be tactical as the State was requesting a 119-month exceptional sentence. Accordingly, Carpenter fails to establish ineffective assistance on this ground.

### 9. Concession at Sentencing

Finally, Carpenter asserts that his counsel was ineffective for conceding guilt at sentencing. Carpenter's guilt, however, was established beyond a reasonable doubt by the jury following trial. Accordingly, Carpenter can neither establish deficient performance nor resulting prejudice from defense counsel's conceding his guilt at sentencing. Thus, he fails to establish ineffective assistance on this ground.

## G. Remaining Issues

We cannot address Carpenter's remaining SAG issues in this direct appeal because they either ask us to re-weigh the evidence and evaluate the credibility of witnesses,[7] or refer to matters outside the trial record.[8] *See, e.g., State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."); *McFarland*, 127 Wn.2d at 335.

Because the State's charging documents were constitutionally sufficient and because Carpenter's SAG arguments lack merit, we affirm his convictions and sentence.

---

[7] For example, Carpenter argues for a new trial based on all the witnesses' inconsistent trial testimony.

[8] For example, Carpenter asserts that he has filed a police brutality complaint against the Tenino Police Department and the Thurston County Sheriff's Department.

No. 43878-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, A.C.J.

MAXA, J.

26