[No. 35018-8-I.   Division One.   August 26, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT A. GABRYSCHAK, *Appellant*.

**250**

*Nielsen & Acosta*; and *Mark K. Yamashita,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Laura D. Hayes, Deputy,* for respondent.

KENNEDY, A.C.J. — Scott Gabryschak appeals his convictions of felony harassment and third degree malicious mischief, contending, among other things, that the trial court improperly denied him a voluntary intoxication instruction. At trial, State's witnesses testified that Gabryschak was intoxicated on the night of his arrest. Gabryschak did not testify and did not call witnesses. Contrary to the trial court's apparent understanding, a defendant need not call witnesses or testify in order to meet the burden of showing evidence of intoxication and its effects, in that such evidence can be elicited through cross examination of the State's witnesses. But because we find no evidence in the record from which a rational trier of fact could determine the effect of Gabryschak's intoxication on his ability to form the required mental state, and because

none of Gabryschak's remaining contentions has merit, we affirm.[1]

## FACTS

On a March evening in 1994, Ferndale police were dispatched to the Pine Tree Apartments, a building inhabited primarily by elderly tenants, in response to the complaint of a tenant that the people in the apartment above her were yelling. The police officers observed that the front door to Apartment 27 was damaged and they heard a loud male voice, later determined to be that of Scott Gabryschak, coming from inside the apartment. The officers also heard an elderly woman, later determined to be Gabryschak's mother, Karyl Clancy, arguing and whispering with Gabryschak. In response to a police inquiry, Clancy stated that she was fine and asked the officers to leave, but the tone of her voice persuaded them that she might be in need of help and that she might be being directed to speak against her will. The officers repeatedly requested that the occupants open the door or come to a window so that they could observe that Clancy was unharmed. Gabryschak refused these requests, ordering the officers off the premises and threatening to. "kick" their "asses" when they attempted to open the front door.

After learning from the apartment manager that 87-year old Fred Longsdale lived in the apartment, the officers obtained a ladder and entered the second-story apartment through an open window. They discovered Longsdale sleeping in the bedroom and Clancy and Gabryschak in the living area. Gabryschak was sitting on the floor with his back to a wall, barring the front door with his feet. When Gabryschak grabbed one of the officers by the leg, he was subdued with pepper spray.

Both Gabryschak and Clancy appeared to the officers to be intoxicated. The apartment was littered with over-

---

[1]Gabryschak's remaining contentions are treated in the unpublished portion of this opinion.

turned furniture and plants, broken pictures, and pieces of broken glass. Clancy told the officers that Gabryschak had kicked open the front door, broken items inside the apartment, and pushed and slapped her, but at trial she denied making these statements. While being escorted to a police vehicle, Gabryschak tried to escape. While being transported to the police station by Officer Shelly Anderson, Gabryschak persistently leaned forward against the driver's seat and repeatedly threatened to kill her, once he was released from jail. Gabryschak continued to make these threats even though the officer told him that he would be charged with felony harassment if he did not shut up.

Gabryschak was charged with felony harassment of Officer Anderson, fourth degree assault of Karyl Clancy, and third degree malicious mischief for kicking in the door of the apartment. The trial court dismissed the fourth degree assault charge after Clancy testified at trial that she was not assaulted.[2] A jury found Gabryschak guilty of felony harassment and malicious mischief and he was sentenced within the standard range. Gabryschak appeals.

## DISCUSSION

■ Gabryschak contends that the trial court erred in denying his request for a voluntary intoxication instruction. When a voluntary intoxication instruction is sought, the defendant must show (1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) evidence that the drinking affected the defendant's ability to acquire the required mental state. *E.g.*, *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37, *review denied*, 119 Wn.2d 1024 (1992)). Put another way, the evidence must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level of culpability to commit

---

[2]We do not reach Gabryschak's claim that the dismissal of the assault charge was error because he has provided no argument in support of his contention. RAP 10.3(a)(5).

the crime charged. *State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983). Evidence of drinking alone is insufficient to warrant the instruction; instead, there must be "substantial evidence of the effects of the alcohol on the defendant's mind or body." *Safeco Ins. Co. v. McGrath*, 63 Wn. App. 170, 179, 817 P.2d 861 (1991), *review denied*, 118 Wn.2d 1010 (1992).

In this case, Officer Anderson testified that Gabryschak "had alcohol on his breath" and "appeared to be intoxicated";[3] Clancy testified that she "had a couple of drinks" and Gabryschak was "intoxicated" and that she considered him too drunk to drive;[4] Officer McCauley testified that Gabryschak was "very intoxicated."[5] Gabryschak did not testify; neither did he call witnesses. Gabryschak's attorney elicited the referenced testimony during cross examination of the State's witnesses. A defendant is not required to present expert testimony to establish that he or she was too intoxicated to form the necessary mental state. *State v. Thomas*, 109 Wn.2d 222, 231, 743 P.2d 816 (1987). Indeed, a defendant may exercise his or her right to refrain from testifying at trial and to rest at the close of the State's case without presenting defense testimony, and still be entitled to a voluntary intoxication instruction, so long as the evidence presented by the State and elicited by the defense during cross examination of the State's witnesses contains substantial evidence of the defendant's drinking and of the effects of the alcohol on the defendant's mind or body. Although affirmative evidence presented by a defendant may ordinarily be more effective, nothing prohibits a defendant from attempting to persuade the trier of fact of his or her inability to form the requisite mental state because of intoxication, by means of cross-examining the State's witnesses.

Here, ample evidence that Gabryschak was intoxi-

---

[3]Report of Proceedings, June 6, 1994, at 35.

[4]Report of Proceedings, June 7, 1994, at 73-74.

[5]Report of Proceedings, June 7, 1994, at 112.

cated was elicited from the State's witnesses during cross examination. Nevertheless, we find no evidence in the record from which a rational trier of fact could reasonably and logically infer that Gabryschak was too intoxicated to be able to form the required level of culpability to commit the crimes with which he was charged. At best, the evidence shows that Gabryschak can become angry, physically violent, and threatening when he is intoxicated.

Intoxication is not an all-or-nothing proposition. A person can be intoxicated and still be able to form the requisite mental state, or he can be so intoxicated as to be unconscious. *State v. Coates*, 107 Wn.2d 882, 891, 735 P.2d 64 (1987). Somewhere between these two extremes of intoxication is a point on the scale at which a rational trier of fact can conclude that the State has failed to meet its burden of proof with respect to the required mental state. *See, e.g., State v. Rice*, 102 Wn.2d 120, 122-23, 683 P.2d 199 (1984) (intoxication instruction necessary where there was evidence that the defendants drank beer all day, ingested between two and five Quaaludes, spilled beer and were unable to hit ping-pong balls, and one of the defendants was so drunk that he did not feel it when he was struck by a car); *State v. Brooks*, 97 Wn.2d 873, 876-77, 651 P.2d 217 (1982) (instruction proper where there was evidence that the defendant drank beer, whiskey, and rum for two days, ate a spider and washed it down with whiskey, and had glassy eyes and slurred speech); *State v. Jones*, 95 Wn.2d 616, 623, 628 P.2d 472 (1981) (instruction required where there was evidence that the 15-year old defendant drank between nine and eleven beers before the incident, had glassy eyes and slurred speech, and had been put into the "drunk tank" after his arrest).

In contrast with these cases, the evidence in Gabryschak's case shows that he responded consistently to the officers' requests to see and speak to the occupants of the apartment—he consistently refused, indicating that he fully understood the nature of the requests; he tried to break and run while being escorted to the police car,

indicating that he was well aware that he was under arrest; he leaned up against the back of Officer Anderson's seat and spoke with conviction into her ear while threatening to kill her once released from jail, indicating that he was fully aware of his destination. No testimony reflects that Gabryschak's speech was slurred, that he stumbled or appeared confused, that he was disoriented as to time and place, that he was unable to feel the pain of the pepper spray, or that he otherwise exhibited sufficient effects of the alcohol from which a rational juror could logically and reasonably conclude that his intoxication affected his ability to think and act in accord with the requisite mental states—with knowledge in the case of the felony harassment charge, and with malice in the case of the malicious mischief charge. We are, therefore, satisfied that the trial court did not err by rejecting the voluntary intoxication instruction.

Affirmed.

A majority of the panel has determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports, but will be filed for public record as provided in RCW 2.06.040. It is so ordered.

COLEMAN and COX, JJ., concur.