IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31139-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN L. SANDERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. – John Lawrence Sanders appeals his conviction for attempted indecent liberties. He contends (1) the State presented insufficient evidence to prove he took a substantial step toward causing M.F. to have sexual contact with him by forcible compulsion and (2) the trial court erred in denying his request for a voluntary intoxication jury instruction. In his statement of additional grounds for review (SAG), Mr. Sanders expresses concerns regarding the State's mention of inadmissible character evidence. We affirm.

FACTS

On March 16, 2012, Mr. Sanders and two acquaintances were drinking beer in Mission Park. The trio had been drinking since 10:00 a.m. By 1:00 p.m., Mr. Sanders had imbibed one and a half beers and smoked a small amount of marijuana before reaching Mission Park, giving him a "small buzz." Report of Proceedings (RP) at 120.

One of Mr. Sanders' companions testified all three were intoxicated "[w]ith beer." RP at 104. Around 1:00 p.m., Mr. Sanders thought he recognized a woman walking through the park. He whistled and waved to get her attention while walking toward her. The woman was Ms. F., a 19-year old student at Moody Bible College. When she noticed Mr. Sanders waving, she walked toward him, assuming he was someone she knew. Nearing Mr. Sanders, she did not recognize him but decided she would "share the gospel" with him. RP at 51.

Mr. Sanders told Ms. F. that he had mistaken her for his friend. As the two introduced themselves, Mr. Sanders touched and rubbed a stain on Ms. F.s' jacket; the stain was over her breast. Ms. F. swatted his hand away and indicated her desire to leave. Mr. Sanders then said, "Oh, don't go" and grabbed her wrist. RP at 54. Mr. Sanders' grasp was not "super forceful, but he had a good hold." RP at 55. Ms. F. was a little fearful for her physical safety. While Mr. Sanders maintained his grip on her wrist, he leaned in and kissed her on her lips. Once again Ms. F. expressed her desire to leave. Mr. Sanders apologized, let go of her wrist, and said, "I just keep thinking that you're Angela, my friend Angela. You guys have the same hips." RP at 57. While saying this, Mr. Sanders touched her hips and butt. When he tried to pull her towards him, Ms. F. stepped back, swatting his hands away. Ms. F. testified his actions were "inappropriate," "creepy," and "scary"; she was concerned she might be hurt. RP at 58. Ms. F. believed the touching contacts with Mr. Sanders were sexual in nature and not accidental.

2

Ms. F. left. Mr. Sanders did not follow her, but he did make grunting noises and told her to "hit him up" if she was single. RP at 59. Ms. F. contacted her school and the police. After obtaining Mr. Sanders' description, the police found him in Mission Park and arrested him on an outstanding warrant. When the officers arrived, Mr. Sanders believed he had imbibed 3 to 4, 16-ounce beers. Officer Sherri Malinak related Mr. Sanders could walk but could not speak very clearly. She described Mr. Sanders' behavior while in the back of the patrol car as "very belligerent" and "intoxicated." RP at 42. He made numerous sexual comments to the female officers in the car.

At trial, the court denied Mr. Sanders' request for a jury instruction on voluntary intoxication. He denied touching Ms. F. in any way. The jury found him guilty as charged. After his conviction, Mr. Sanders appealed.

## ANALYSIS

### A. Evidence Sufficiency

The issue is whether sufficient evidence supports Mr. Sanders' attempted indecent liberties conviction. Mr. Sanders contends the State failed to prove he used forcible compulsion to have sexual contact with Ms. F.

Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency

3

challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of conflicting testimony, witness credibility, and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

The crime of attempted indecent liberties requires proof of the intent to commit indecent liberties and a substantial step toward the commission of indecent liberties. *See State v. Vermillion*, 66 Wn. App. 332, 342, 832 P.2d 95 (1992). The essential elements of indecent liberties are knowingly causing another person who is not his spouse to have sexual contact with him by forcible compulsion. RCW 9A.44.100(1)(a). Forcible compulsion is "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself." RCW 9A.44.010(6); *see also State v. Ritola*, 63 Wn. App. 252, 255, 917 P.2d 1390 (1991) (no forcible compulsion because force was not used to overcome resistance as the touching of the victim's breast was unexpected, creating no opportunity to resist).

Our focus is forcible compulsion. Mr. Sanders places much emphasis on Ms. Feltes' testimony where she said she was "uncomfortable" with Mr. Sanders' actions and a "little fearful" of being hurt. RP at 55. He argues this does not rise to the level of "fear of death or physical injury" needed for forcible compulsion. But forcible compulsion can be found in two ways, by physical force which overcomes resistance *or* by a threat which places a person in fear of injury. Mr. Sanders ignores the first half of

4

the definition. While the initial touch of Ms. F.s' breast may have been unexpected, Ms. F. did swat his hand away. When she expressed her desire to leave, he grabbed her wrist and kissed her. Again, Ms. F. tried to leave, but Mr. Sanders grabbed her hips and pulled her toward him. A rational jury could, viewing the evidence in the light most favorable to the State, find Mr. Sanders took a substantial step in using physical force to overcome Ms. F.s' resistance beyond a reasonable doubt.

B. Voluntary Intoxication Instruction Request

The issue is whether the trial court erred in denying Mr. Sanders' request for a voluntary intoxication jury instruction. Mr. Sanders contends substantial evidence exists of consumption and effects of alcohol to warrant the instruction.

A trial court's decision to reject a jury instruction is reviewed for an abuse of discretion. *State v. Priest*, 100 Wn. App. 451, 454, 997 P.2d 452 (2000). RCW 9A.16.090 allows a jury to take a defendant's intoxication into consideration in determining whether a defendant acted with the requisite mental state. Criminal defendants are entitled to voluntary intoxication instructions "only if: (1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected his . . . ability to acquire the required mental state." *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992). In other words, "the evidence must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level

5

of culpability to commit the crime charged." *State v. Gabryschak*, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996).

Showing a defendant drank alcohol is insufficient; evidence must show the alcohol's effect on a defendant's mind or body. *Id.* at 253. Expert testimony is not needed to show this. *Id.* For example, in *Gabryschak*, while testimony showed the defendant's inebriated state, no evidence showed whether the defendant's intoxication affected the defendant's ability to form the requisite mental state. *Id.* at 253-54. The evidence instead showed the defendant understood the police's requests, was aware he was under arrest, and knew he was going to jail. *Id.* at 254-55; *see also State v. Byrd*, 30 Wn. App. 794, 798, 638 P.2d 601 (1981) (no intoxication where defendant gave a detailed recital of the events at trial). *But see State v. Rice*, 102 Wn.2d 120, 122-23, 683 P.2d 199 (1984) (intoxication instruction necessary where defendants drank beer all day, ingested Quaaludes, spilled beer, had no hand-eye coordination, and did not feel anything when struck by a car).

The crime of attempted indecent liberties contains a mental state element. Substantial evidence showed Mr. Sanders was drinking alcohol. But Mr. Sanders failed to demonstrate his intoxication affected his ability to form the necessary mental state. At the time Mr. Sanders approached Ms. F., he had only drunk one and a half to four beers. Ms. F. testified his speech was slow but not slurred. She felt his actions were not accidental. David Fisher, one of Mr. Sanders' companions on the day in question, testified Mr. Sanders "looked fine to [him]" right before he approached Ms. F. RP at

103. While Mr. Sanders' version of his actions during the encounter was contradictory to Ms. Feltes, he still clearly remembered the events of that day, from buying beer in the morning to drinking in the park to spying Ms. F. across the park to realizing Ms. F. was not in fact his friend to what he ate for lunch; moreover, his recollection of the conversation the two had mirrored Ms. F.s' testimony, except he denied touching her. The evidence, similar to that seen in *Gabryschak* and *Byrd*, shows Mr. Sanders was aware of his surroundings and could ably recall the day. While perhaps Mr. Sanders was more inebriated when the police arrested him, it is his state of mind during his encounter with Ms. F., and not his state of mind in the back of the police car, that is critical here. Given all, the trial court correctly ruled the evidence did not support giving a voluntary intoxication instruction because it failed to show the alcohol consumption interfered with Mr. Sanders' ability to acquire the necessary mental state.

C. Statement of Additional Grounds

In a statement of additional grounds, citation to the record and legal authorities is not needed. RAP 10.10(c). However, nothing in the record substantiates Mr. Sanders' claim. The State did bring up Mr. Sanders' previous conviction, but it did not do so in the presence of the jury. The court ruled the State could not bring up the conviction, the jury was brought back in, and the State resumed questioning without mentioning the conviction.

7

No. 31139-2-III
*State v. Sanders*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

8