# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73923-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEROY CURTIS RUSSELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 17, 2017 |
| | ) | |

VERELLEN, C.J. — Leroy Russell challenges his jury conviction for one count of gross misdemeanor harassment and one count of attempted felony harassment. Russell contends he received ineffective assistance of counsel because his attorney failed to propose a voluntary intoxication instruction. Because Russell does not establish that he would have been entitled to such an instruction or that counsel's failure to propose one was deficient, we affirm.

## FACTS

On the evening of May 8, 2015, Adrian Hammond was having a barbecue with his roommate, David Stout, and some other friends in the front yard of his Everett home. Stout's pit bull was also in the front yard. Russell, who did not know Hammond or any of his friends, was driving his truck down Hammond's street when he came to a stop in front of Hammond's house. According to Hammond, Russell "looked over at us and sat

there like he was in a daze."[1] Russell had his own pit bull in the front passenger seat. Russell's pit bull and Stout's pit bull began barking loudly at each other. Fearing the confrontation between the two dogs would escalate, Hammond shouted at Russell to drive away. Russell drove away and Stout took his dog inside the house. Hammond called 911 and reported the encounter. Officers were dispatched to the area but could not find Russell.

About 20 minutes later, Russell drove by again and pulled into Hammond's driveway. According to Hammond, Russell opened the driver's side door, leaned out, and told the group "he was going to shed our blood all over the property and we're all going to die."[2] Russell drove off and parked his truck at a bowling alley down the street. Russell got out of the truck and began walking back towards Hammond's house on foot, with his pit bull on a leash. Hammond again called 911. Officers Chris Olsen and Carl Everett arrived and encountered Russell in Hammond's driveway. After speaking with both Russell and Hammond, Officer Olsen told Russell to leave the area but not to drive.

Russell walked down the street towards a separate group of people having a barbecue in front of their apartment complex. Officer Olsen observed Russell interact with that group of people. The people "appeared shocked" and beckoned Officer Olsen to come over.[3] Officer Olsen walked over to the group and asked what had happened.

---

[1] Report of Proceedings (RP) (July 27, 2015) at 58.

[2] RP (July 28, 2015) at 131.

[3] Id. at 238.

2

One of the individuals told Officer Olsen that Russell "had just made threats to shoot them."[4]

Officer Olsen followed Russell, who was walking towards his truck. Officer Olsen detained Russell and told him to tie up his dog. Russell denied threatening anyone and said that Hammond and his friends had actually threatened him with a rifle. Officer Olsen placed Russell under arrest. According to Officer Olsen, Russell began "[c]alling me a bitch, saying that, you know, he doesn't care if he has to do the time, he'll come after me. And then later gets more specific saying he's going to kill me and Officer Everett as well."[5] Russell gave the officers permission to search his truck, where they found a half-full can of Four Loko in the cup holder.

As Officer Olsen transported Russell to the jail, Russell continued to make similar threats as before. He also told Officer Olsen "how easy it was to look somebody up in the internet and find out where they live" and "[t]hat he would kill me once he was out of jail."[6] Russell told Officer Olsen "he had nothing to lose" and "he would come after my family as well."[7]

The State charged Russell by amended information with one count of felony harassment for the threats made against Hammond and two counts of attempted felony harassment for the threats made against Officer Olsen and Officer Everett.

Russell moved to suppress the statements made to the officers. At a CrR 3.5 hearing, Officer Olsen testified that Russell appeared to be "fairly heavily intoxicated" at

---

[4] Id.

[5] Id. at 240.

[6] Id. at 243-44.

[7] Id. at 244.

the time of his arrest and had to be instructed multiple times to tie up his dog.[8] However, Officer Olsen testified that Russell did not appear to be confused about the basis for his arrest. According to Officer Olsen, Russell was primarily concerned with what would happen to his dog.

Russell also testified at the CrR 3.5 hearing. Russell stated that he initially failed to tie up his dog because Officer Olsen refused to give him a reason for doing so. Russell was able to precisely recall the order of events, the number of officers involved, and where he had tied his dog. Russell denied threatening Hammond and his friends, or interacting with the second group of people at all.

The trial court found that Russell was "very intoxicated" at the time of the crimes.[9] However, the trial court ruled that the statements to the officers were voluntary and therefore admissible at trial. The trial court noted that nothing "would compel the defendant to have said any of those things or otherwise overcome his voluntariness."[10]

Defense counsel notified the State that Russell's defense would be general denial and that she would not pursue a voluntary intoxication defense. The State contended that if Russell was not raising a voluntary intoxication defense, Russell should not be permitted to argue that intoxication affected his judgment or intent. The State conceded that Russell could, however, argue that intoxication affected his memory the night of the incident. The trial court ruled:

---

[8] RP (July 24, 2015) at 14-15.
[9] Clerk's Papers (CP) at 10.
[10] RP (July 24, 2015) at 58.

To the extent that the [d]efense seeks to cross examine witnesses about their ability to recall or perceive information based on intoxication, you are well within your right to do that. But with regard to arguing the effect of alcohol on your client, in my view if you're not seeking a voluntary intoxication instruction, you are not allowed to argue that somehow there is a mitigation for his behavior based upon alcohol intoxication. Okay?[11]

Defense counsel responded:

Your Honor, in that case I would ask that the Court exclude testimony from any witness in the absence of my client testifying that they felt in any way, shape or form he was impaired or under the influence of any substance, including drugs or alcohol, because the State has said it is not relevant unless it has to do with memory, so therefore, it is not relevant.[12]

Defense counsel also moved to exclude evidence of the Four Loko can found in Russell's truck. The trial court granted the motion.

The jury failed to reach a verdict on the felony harassment charge involving Hammond, but convicted Russell of the lesser offense of gross misdemeanor harassment. The jury convicted Russell of attempted felony harassment involving Officer Olson, but acquitted him of attempted felony harassment involving Officer Everett.[13]

At sentencing, the trial court asked Russell about whether he was intoxicated at the time of the crimes.

COURT: Let me ask you, there was some, even though it wasn't really discussed much at trial, there was some issue about whether you were under the influence of alcohol at the time this all happened; is that true?

RUSSELL: Yes, ma'am. No. No, it wasn't an issue with them either, because they didn't ask about it. They didn't, you know, give

---

[11] RP (July 27, 2015) at 16-17.

[12] Id. at 17.

[13] Officer Everett, who was on medical leave, did not testify at trial.

5

me a breathalyzer. There was no field sobriety test or anything.[14]

The trial court imposed a low end standard range sentence. Russell appeals.

## DECISION

Russell argues that defense counsel was ineffective for failing to request a voluntary intoxication instruction. He argues that he was entitled to such an instruction and counsel's failure to propose one prejudiced the outcome of the trial.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings.[15] To establish ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient.[16] In the context of failure to request a jury instruction, a defendant must show that he was entitled to the instruction and that the failure to request it "fell below an objective standard of reasonableness under professional norms."[17] The defendant must then demonstrate resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[18] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[19]

---

[14] RP (July 30, 2015) at 8-9.

[15] Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[16] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[17] State v. Townsend, 142 Wn.2d 838, 843-44, 15 P.3d 145 (2001); State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012)

[18] McFarland, 127 Wn.2d at 335.

[19] Strickland, 466 U.S. at 694.

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances."[20] An attorney's performance is not deficient if it can be characterized as part of a legitimate trial strategy.[21] There is a strong presumption that a defendant received effective representation, and exceptional judicial deference must be given when evaluating counsel's strategic decisions.[22]

A jury may be instructed on voluntary intoxication only if there is substantial evidence that the defendant's intoxication affected his ability to form the necessary mental state to commit the charged crime.[23] In other words, a defendant is entitled to an instruction on voluntary intoxication only if (1) a particular mental state is an element of the crime, (2) there is substantial evidence the defendant was drinking, and (3) there is substantial evidence that the drinking affected the defendant's ability to form the required mental state.[24] Evidence of drinking alone is insufficient; there must be substantial evidence of the alcohol's effects on the defendant's mind or body.[25] "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding."[26]

Here, the first two requirements for a voluntary instruction are satisfied. As charged here, a person is guilty of felony harassment if, without lawful authority, the

[20] In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

[21] McFarland, 127 Wn.2d at 336.

[22] Id. at 335.

[23] State v. Gabryschak, 83 Wn. App. 249, 252-53, 921 P.2d 549 (1996).

[24] State v. Gallegos, 65 Wn. App. 230, 238, 828 P.2d 37 (1992).

[25] Gabryschak, 83 Wn. App. at 253.

[26] State v. Maxfield, 125 Wn.2d 378, 385, 886 P.2d 123 (1994).

person knowingly threatens to kill a person and places the person threatened in reasonable fear that the threat will be carried out.[27] A person is guilty of an attempt to commit a crime "if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime."[28] Thus, both felony harassment and attempt to commit harassment contain a particular mens rea requirement.

Furthermore, there was evidence from which a jury could reasonably conclude that Russell was intoxicated at the time of the incident. Hammond described Russell as "in a daze." Officer Olsen testified that Russell was "fairly heavily intoxicated," to the point that he instructed Russell not to drive. Officers also found a half-full container of an alcoholic beverage in the cup holder of Russell's truck.

However, Russell fails to establish that there was substantial evidence that defense counsel could present to show he was so intoxicated he could not form the intent to commit the crimes. Russell testified in detail at the CrR 3.5 hearing about his actions and had no difficulty recalling the sequence of events. Moreover, the evidence showed that Russell was aware of the consequences of his actions. While threatening Officer Olsen, Russell stated that he didn't care "if he has to do the time" and that he would kill Officer Olsen "once he was out of jail." Russell and Officer Olsen also had a "fairly significant exchange" about what would happen to Russell's dog while Russell was in custody.[29] Thus, Russell was not entitled to a voluntary intoxication instruction.[30]

---

[27] RCW 9A.46.020.

[28] RCW 9A.28.020(1).

[29] RP (July 24, 2015) at 15.

8

Nevertheless, even assuming he was entitled to such an instruction, Russell fails to show that defense counsel's failure to request it constituted ineffective assistance. Here, defense counsel had a valid strategic reason for not pursing a voluntary intoxication defense. As defense counsel stated, "[T]he fact that all of the witnesses are in agreement that there were signs of impairment is something I am actually sort of surprised that the State appears to be moving to suppress, because certainly alcohol can affect someone in a negative way in terms of their temper."[31] In other words, defense counsel candidly acknowledged the danger of presenting evidence about Russell's intoxication because a jury could infer that alcohol had made Russell angry and irrational enough to make threats to kill strangers. Instead, defense counsel made the decision to focus on the credibility of the State's evidence. This was a legitimate and sensible choice because Hammond contradicted himself several times during the trial, his version of events was inconsistent with Stout's, and he exhibited memory impairment to the point where he could not recall the prosecutor's name despite being reminded of it several times. Defense counsel's strategy resulted in an acquittal on the attempted harassment of Officer Everett and a conviction for only the lesser offense against Hammond. Because defense counsel's decision not to request a voluntary intoxication instruction was a legitimate trial strategy, Russell's ineffective assistance of counsel claim fails.

Russell asks this court to waive appellate costs. The State did not respond to Russell's request. The trial court in this case found Russell to be indigent for the

---

[30] Though not before the jury, Russell also denied at sentencing that he was under the influence and noted that the officers did not perform field sobriety tests or arrest him for driving under the influence.

purpose of this appeal. Once a trial court grants an order of indigency, this court will respect the presumption of continued indigency throughout review "unless we are shown good cause not to do so."[32] Consequently, we exercise our discretion to deny an award of appellate costs.

Affirmed.

WE CONCUR:

_____

_____
Trickey, J

_____

_____
[31] RP (Jul. 27, 2015) at 14.

[32] State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016).