# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76742-9-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| DALE ROBERT SMITH, | ) ) | |
| Appellant. | ) ) | FILED: July 31, 2017 |

APPELWICK, J. — Smith was convicted of assault in the third degree. He contends that his conviction is not supported by sufficient evidence, that the jury instructions relieved the State of its burden to prove intent, and that he received ineffective assistance of counsel. We affirm.

## FACTS

On the evening of December 31, 2015, Dale Smith went to his friend Jared Collins's house for a small party. Smith was drinking quite a bit. Later in the evening, Smith fell in the bathroom. Collins found Smith passed out in the bathroom. Collins called 911 after he could not find Smith's pulse.

Collins woke Smith up before medical assistance arrived. Smith appeared to be very intoxicated. When the medics arrived, Smith was having mood swings and refusing to go to the hospital. He became very depressed and stated that he wanted to get his gun from his car to shoot himself. The medics called for police assistance.

Toledo Police Officer Andrew Scrivner and Lewis County Sheriff's Office Deputies Ezra Andersen and Matthew Schlecht responded to the call. The officers noticed that Smith appeared to be very intoxicated.

Smith agreed to go to the hospital. Deputies Schlecht and Andersen took Smith out of the house, holding on to his arms to help him walk. The officers had to force Smith on to a Gurney. Once he was strapped in, Smith changed his mind. He said he would agree to go to the hospital only if the officers let him urinate beforehand. The officers agreed to this condition, and helped Smith walk to the bushes and held him to maintain his balance while he urinated.

Afterward, Smith's demeanor changed. Officer Scrivner heard him make statements suggesting that he was not going to the hospital. Smith then lunged toward Deputy Schlecht, hitting the deputy in the midsection with his shoulder. Smith said, " 'Let me see that gun.' " Smith reached for Deputy Schlecht's gun, and started lifting up on Deputy Schlecht's belt. Deputy Schlecht secured his firearm. Officer Scrivner and Deputy Andersen restrained Smith. The officers placed Smith in handcuffs after a brief struggle.

Smith was charged with assault in the third degree. He was convicted as charged. He appeals.

## DISCUSSION

Smith argues that there was insufficient evidence to support his conviction. He asserts that the jury instructions were confusing and relieved the State of the burden of proving the element of intent. And, he contends that if his conviction was supported by sufficient evidence, then his counsel provided ineffective

assistance by failing to elicit evidence that Smith was too intoxicated to form the requisite intent.

## I.    Sufficiency of the Evidence

Smith asserts that his conviction is not supported by sufficient evidence. Smith contends this is so, because the State failed to prove that he had the specific intent to commit an assault.    Smith points to the evidence of his extreme intoxication as proof that he could not form the requisite intent.

In determining the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  State v. Condon, 182 Wn.2d 307, 314, 343 P.3d 357 (2015).  A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences therefrom. Id. Credibility determinations are within the province of the jury, and we will not review them.  State v. Myers, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997).

A person commits assault in the third degree if he or she

> (a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself, herself, or another person, assaults another; or
>
> . . . .
>
> (g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

RCW 9A.36.031(a), (g).  The "to convict" instruction in this case informed the jury of these two alternative bases on which it could find Smith committed assault in the third degree.

3

To commit an assault, a person must have a specific intent to cause bodily harm or to create a reasonable apprehension of bodily harm. State v. Byrd, 125 Wn.2d 707, 712-13, 887 P.2d 396 (1995). Specific intent cannot be presumed, but it can be inferred as a logical probability from the facts and circumstances. State v. Pedro, 148 Wn. App. 932, 951, 201 P.3d 398 (2009).

An act committed by a person who is voluntarily intoxicated is no less criminal due to the person's intoxication. RCW 9A.16.090. Under this statute, voluntary intoxication is not a defense to the crime. State v. Coates, 107 Wn.2d 882, 891, 735 P.2d 64 (1987). But, if a particular mental state is a necessary element of the crime, the fact of the person's intoxication may be considered in determining his or her mental state. RCW 9A.16.090. To be entitled to a voluntary intoxication instruction, the crime must have a particular mental state for an element, there must be substantial evidence of drinking, and there must be evidence that the drinking affected the defendant's ability to form the requisite mental state. State v. Gabryschak, 83 Wn. App. 249, 252, 921 P.2d 549 (1996).

Smith contends that he should have succeeded in showing that his voluntary intoxication prevented him from forming the requisite intent to assault the deputy. He asserts this is so, because in addition to the great amount of evidence of his severe intoxication, the officers testified that even if Smith did not voluntarily go to the hospital, they were required to bring him in under an " 'involuntary treatment act.' "

RCW 70.96A.120(2) permits law enforcement officers to take a person into protective custody in certain circumstances. RCW 70.96A.120(2) provides, in pertinent part,

> [A] person who appears to be incapacitated or gravely disabled by alcohol or other drugs and who is in a public place or who has threatened, attempted, or inflicted physical harm on himself, herself, or another, shall be taken into protective custody by a peace officer or staff designated by the county and as soon as practicable, but in no event beyond eight hours brought to an approved treatment program for treatment.

A person is "incapacitated" by alcohol when he or she "is gravely disabled or presents a likelihood of serious harm to himself or herself, to any other person, or to property." RCW 70.96A.020(13). A person is "gravely disabled" by alcohol when he or she either is in danger of serious physical harm due to a failure to provide for essential human needs, or manifests a severe deterioration in routine functioning. RCW 70.96A.020(11). A "likelihood of serious harm" exists when there is a substantial risk that the person will inflict physical harm upon his or her own person, as evidenced by threats or attempts to commit suicide or harm oneself. RCW 70.96A.020(17)(a).

The record contains ample evidence that Smith was a person who appeared to be incapacitated by alcohol and who had threatened physical harm on himself. Officer Scrivner testified that when Smith was sitting on the couch inside, his speech was slurred, and he appeared to have urinated on himself. Officer Scrivner could smell intoxicants on Smith. Deputy Schlecht also testified that Smith smelled of intoxicants and appeared very intoxicated. Deputy Schlecht said that he told Smith he had to go to the hospital, "because it's an involuntary treatment act."

5

Deputy Schlecht explained that Smith needed to go to the hospital because he was too intoxicated to care for himself. And, Smith had made suicidal statements and had the means to carry out this threat.

But, evidence in the record also shows that Smith remained capable of making volitional decisions and intentional acts. When Deputy Schlecht arrived on the scene, Smith recognized him immediately. Smith greeted Deputy Schlecht by name and appeared happy to see him. As Deputy Schlecht started talking with Smith to assess the situation, Smith responded to questions. Smith made the decision to voluntarily go to the hospital for treatment. But, upon being strapped to the gurney and told that he did not have a choice in whether he went to the hospital, Smith became upset. He unbuckled himself from the gurney and decided he no longer wanted to go to the hospital. He negotiated with the officers: if they let him urinate, he would agree to go to the hospital. After urinating, Smith told the officers that he was finished. Then, he turned toward Deputy Schlecht and shoved his shoulder into the deputy's midsection. As Smith made contact with Deputy Schlecht, he said, " 'Let me see that gun.' " Smith then acted on those words, grabbing on Deputy Schlecht's firearm and pulling his duty belt upward. After the officers restrained him, Smith reiterated his opposition to going to the hospital. He struggled and yelled that officers would not be able to take him in.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could have concluded that Smith acted with the requisite intent to assault Deputy Schlecht. Sufficient evidence supports the conviction for assault in the third degree.

II.  Jury Instructions

Smith argues that the jury instructions were confusing and relieved the State of its duty to prove the element of intent.  He contends that the multiple jury instructions pertaining to intent required the jury to make inferences to understand how to apply the law.

Jury instructions must inform the jury of the applicable law, not mislead the jury, and allow the parties to argue their theories of the case.  State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).  It is reversible error to instruct the jury in such a way that relieves the State of its burden to prove every element of a crime beyond a reasonable doubt.  Id.  Where jury instructions contain a manifest error affecting a constitutional right, the defendant may challenge the instructions on appeal even if he or she did not object to them below.  State v. Stein, 144 Wn.2d 236, 240, 27 P.3d 184 (2001).  We review challenged jury instructions de novo, considering the context of the instructions as a whole.  Bennett, 161 Wn.2d at 307.

Here, the jury instructions contained five instructions pertaining to assault and intent.  Instruction three defined assault in the third degree:

> A person commits the crime of assault in the third degree when he or she assaults another with intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension of himself, herself, or another person, or assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

Instruction four, the to convict instruction, provided,

> To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

7

(1) That on or about January 1, 2016, the defendant assaulted Deputy Mathew Schlect;

(2a) That the assault was committed with intent to prevent or resist the execution of a lawful process or mandate of a court officer or the lawful apprehension or detention of the defendant or another person; or

(2b) That at the time of the assault Deputy Mathew Schlecht was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties; and

(3) That any of these acts occurred in the State of Washington.

Instruction five gave the definition of assault:

An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

Instruction six clarified the requisite intent:

A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime.

And, instruction seven explained the voluntary intoxication theory:

No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted with intent.

Smith contends that these instructions did not clearly instruct the jury that intent is an essential element of the offense. He contends that option 2b of the to convict instruction omitted the element of intent. And, he argues that the to convict

8

instruction should have provided that the State is required to prove intent as an element of the crime.

We disagree. Instruction three tracks the statutory definitions of assault in the third degree that pertained to the case. See RCW 9A.36.031(1)(a), (g). Instruction four informed the jury that it must find that Smith assaulted Deputy Schlecht. It provided two alternative requirements: either Smith intended to avoid a lawful process or apprehension, or Deputy Schlecht was a law enforcement officer performing his official duties. Instruction five defined the element of assault, specifying clearly that an assault is an intentional act. Instruction six defined intent. And, instruction seven permitted the jury to consider whether Smith's intoxication prevented him from acting intentionally. In reviewing jury instructions, we look at the context of the instructions as a whole. Bennett, 161 Wn.2d at 307. These instructions acted as a cohesive unit to inform the jury of the requisite intent. They did not relieve the State of its burden to prove that Smith acted intentionally.

III.    Ineffective Assistance of Counsel

Smith contends that if sufficient evidence supports his conviction, then his trial counsel provided ineffective assistance by failing to present evidence to support the voluntary intoxication theory. He asserts that if the evidence that was presented was not sufficient to establish that he was incapable of forming the requisite intent, then effectively expert testimony would be necessary to succeed on a voluntary intoxication theory.

To show ineffective assistance of counsel, a defendant must demonstrate both that counsel's conduct was deficient and that the deficient performance

resulted in prejudice. State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). To show that counsel's performance was deficient, the defendant must establish that it fell below an objective standard of reasonableness given the circumstances. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We engage in a strong presumption that counsel's performance was effective. Id. at 335. To show that the deficient performance was prejudicial, the defendant must show that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id.

Generally, counsel's decision to call a witness is a matter of legitimate trial tactics. In re Pers. Restraint of Monschke, 160 Wn. App. 479, 492, 251 P.3d 884 (2010). Unless the defendant shows that counsel failed to adequately investigate or prepare for trial, we will presume counsel's decision was strategic. Id.

To succeed on a voluntary intoxication theory, a defendant does not need to present expert testimony that would show that he or she was too intoxicated to form the requisite mental state. Gabryschak, 83 Wn. App. at 253. Instead, a defendant may pursue a voluntary intoxication theory even if he or she elects not to testify and rests at the close of the State's case. Id. While affirmative defense evidence may be more effective, cross-examination of the State's witnesses alone may be enough to persuade the trier of fact that the defendant could not form the requisite mental state. Id.

Here, the State's witnesses testified as to Smith's extreme intoxication in direct examination. In cross-examining the State's witnesses, Smith elicited evidence about the extent of his intoxication and the effect it had on his mental

state. He also presented his own witness, Collins, who testified as to Smith's level of intoxication. And, Smith testified on his own behalf. He stated that he was so intoxicated on the night in question that his memory of the night is incomplete. He testified that he has no independent recollection of anything that happened after he walked into the house.

Counsel elicited evidence of Smith's intoxication from State witnesses, a defense witness, and Smith. Smith has not identified any omitted fact witness that should have been called. Washington courts do not require expert evidence to prevail on a voluntary intoxication theory. Counsel deciding not to pursue expert evidence in light of that fact was a legitimate strategy even if unsuccessful. Nothing in the record suggests that counsel did not adequately prepare for trial. Therefore, Smith has not met his burden of showing that counsel's performance was deficient.

We affirm.

WE CONCUR:

11