IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DEANGELOS TRIMONE JEFFERY,<br><br>Appellant. | No. 88257-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. — A jury convicted Deangelos Jeffery of burglary in the first degree after he entered a fast-food restaurant through a drive-through window while holding a gun, to look for his credit card. On appeal, he challenges the trial court's refusal to give the jury instruction on voluntary intoxication. He also challenges the calculation of his offender score, contending the trial court failed to sufficiently conduct an analysis of his out-of-state felony history. We affirm.

FACTS

On November 17, 2022, Trevor Ferguson and Mario Wilson were working a night-time shift at Jack in the Box when a car with Jeffery seated as a passenger, proceeded to the drive-through to get food. Ferguson had put the food in a bag, and Wilson was at the window to take the payment. After the female driver paid for and received the food, Jeffery then "stuck [his] head" through the window and said that Wilson had not returned his card. Jeffery "hopped in" through the drive-through window and into the employee-only area of

1

the restaurant. Jeffery had a gun.

Wilson, Ferguson, and Jeffery spent 15 to 20 minutes searching for the card in the restaurant. At some point during the search, Ferguson removed his jacket and placed it in the office. Jeffery followed Ferguson into the office and accused him of pressing a security button to call the police. Ferguson reassured Jeffery he did not do that.

Ferguson testified that Wilson offered Jeffery his wallet, but Jeffery refused. Then, without any prompting from Jeffrey, Wilson handed Jeffery the key to the cash register and told Jeffrey to take the money from the cash register located at the drive-through window, which he did, then counted the money and left. As Jeffery was leaving the restaurant, he looked into the surveillance camera and "explain[ed] to the camera [that] it wasn't [Jeffery's] fault that he came in here" and blamed the employees for losing his card. He then "hopped through" the drive-through window and left.

The State charged Jeffery with robbery in the first degree and burglary in the first degree. At trial, Jeffery did not testify or call any witnesses. The State called Ferguson, the manager of the Jack in the Box, and four law enforcement witnesses. Jeffery proposed a voluntary intoxication jury instruction, and the court denied the request.

A jury found Jeffery guilty of burglary in the first degree and not guilty of robbery in the first degree. To prepare for sentencing, the State submitted its sentencing memorandum, which described Jeffery's four felony convictions in Alabama and attached certified copies of sentencing documents in each of the

four Alabama cases. According to the State, all of the scorable felonies were convictions from Alabama, and for each of the Alabama felonies, the State detailed its comparability analysis to a felony in Washington in its memorandum but summarily mentioned it at the sentencing hearing.

The judge turned to Jeffery's counsel and stated "I didn't really see you challenging the comparability analysis," counsel responded, "I did not present any arguments to the Court as to the issues of comparability." Thereafter both counsels argued whether the Alabama convictions for robbery in the third degree and assault in the second degree encompass the same criminal conduct for purposes of scoring, with the trial court agreeing with defense counsel that both the robbery in the third degree and assault in the second degree involved same criminal conduct. Counsels then presented arguments on the convictions relevant to determining the "washout" period. The State then proceeded to state the felony convictions in Alabama and their comparable felonies in Washington and assigned a score of 5, which after checking, defense counsel agreed with.

Toward that end, the judge stated "so it's on the record that as far as the comparability analysis, I agree with analysis of the State as far as the comparability. So I just put that on the record. And, again, [defense's counsel] didn't really object to that. Not that he has to, but I agree with the State's comparability analysis." Neither counsel commented further about the court's comparability analysis.

Jeffery timely appealed.

3

ANALYSIS

Voluntary Intoxication Instruction

Jeffery argues that the trial court violated his due process right to present his theory of the case by denying his proposed jury instruction on voluntary intoxication. We disagree.

"An instruction is sufficient if it correctly states the law, is not misleading, and permits counsel to argue [their] theory of the case." State v. Mark, 94 Wn.2d 520, 526, 618 P.2d 73 (1980). We review de novo issues of sufficient evidence to support jury instruction. State v. Bea, 162 Wn. App. 570, 577, 254 P.3d 948 (2011). " '[W]hen determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction.' " State v. Grott, 195 Wn.2d 256, 270, 458 P.3d 750 (2020) (quoting State v. Wingate, 155 Wn.2d 817, 823 n. 1, 122 P.3d 908 (2005)).

When a voluntary intoxication instruction is sought, a defendant must show "(1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) evidence that the drinking affected the defendant's ability to acquire the required mental state." State v. Gabryschak, 83 Wn. App. 249, 252, 921 P.2d 549 (1996). Intoxication is a spectrum with the two extremes being a mere consumption of alcohol and complete unconscious. Gabryschak, 83 Wn. App at 254. "Somewhere between these two extremes of intoxication is a point on the scale at which a rational trier of fact can conclude that the State has failed to meet its burden of proof with

4

respect to the required mental state." Gabryschak, 83 Wn. App. at 254.

State v. Priest, 100 Wn. App. 451, 997 P.2d 452 (2000), involving a conviction for taking a motor vehicle without permission, is instructive. There, the trial court did not give a voluntary intoxication instruction despite evidence that Priest consumed alcohol and "had ample opportunity to see the punched out ignition." Priest, 100 Wn. App. at 454. Even with evidence of alcohol consumption, the court held there was no evidence that alcohol affected his ability to form the specific mental states for taking a motor vehicle without the owner's permission given that Priest was able to communicate with a Washington State Trooper, purposefully gave a false name, and attempted to reduce his charges by offering to be an informant. Priest, 100 Wn. App. at 454-55.

Gabryschak is also instructive. In that case, the court found "ample evidence" of intoxication that included the officers stating Gabryschak was "very intoxicated" and "had alcohol on his breath," and that Gabryschak's mother said he was intoxicated and considered him too drunk to drive. 83 Wn. App. at 253. But there was no evidence from which the jury could reasonably and logically infer that Gabryschak was too intoxicated to be able to form the requisite level of culpability to commit the crime. 83 Wn. App. at 253-54.

In this case, Jeffery did not present any evidence or testimony of him drinking or ingesting any substances. Even if we are persuaded that Ferguson's lay opinion that Jeffery was "under the influence of something" because he had dilated pupils which made him look "not sober" constitutes substantial evidence

5

of consumption, there was no evidence of the effects of intoxication impairing his ability to form the requisite criminal intent. Jeffery understood his predicament of entering the restaurant with a gun, arguing with employees, accusing Ferguson of calling the police, and taking cash from the cash register. It took 15-20 minutes to search for his card, yet there was no testimony about Jeffery's coordination or cognitive limitations such as stumbling or slurred speech. Jeffery left the restaurant by looking into the camera which recorded his presence and statements that the incident was not his fault, which demonstrates his understanding of the circumstances.

The trial court did not err by rejecting the voluntary intoxication instruction.

Comparability Analysis

Jeffery argues the trial court erred in using his out-of-state convictions from Alabama in calculating his offender score, which included an "on-the-record" comparison of the felonies in Alabama to felonies in Washington. We disagree.

In establishing a defendant's criminal history for sentencing purposes, the State must prove by a preponderance of the evidence that a prior conviction exists. RCW 9.94A.500(1); State v. Ammons, 105 Wn.2d 175, 186, 713 P.2d 719, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). An out-of-state conviction may not be used to increase the defendant's offender score unless the State proves it is a felony in Washington. State v. Weiand, 66 Wn. App. 29, 831 P.2d 749 (1992). The best evidence of a prior conviction is a certified copy of the judgment, but the State may introduce documents of record or transcripts of prior proceedings to establish the defendant's criminal history.

State v. Cabrera, 73 Wn. App. 165, 168, 868 P.2d 179 (1994). However, if the defendant objects to the use of those documents as proof of the offenses, the State must present additional evidence of the existence and classification of an out-of-state conviction to satisfy its burden of proving the convictions by a preponderance of the evidence. Cabrera, 73 Wn. App. at 169.

In this case, Jeffery's criminal history of felonies was from Alabama, and he does not challenge the existence or proof of that history. Rather, he contends the trial court did not conduct an adequate "on-the-record" comparison of those Alabama felonies to comparable felonies in Washington "to determine if the out-of-state convictions should be included in the offender score," citing State v. Labarbera, 128 Wn. App. 343, 349, 115 P.3d 1038 (2005) in support of his "on-the-record" sufficiency argument. Labarbera does not help Jeffery's position because the trial court in Labarbera "made no reference to [the] documents regarding comparability" despite being presented with Labarbera's convictions in California. 128 Wn. App. at 350. Accordingly, this court's "on-the-record" statement was in reference to the absence of any record showing the trial court's consideration of evidence of Labarbera's felony history in California. 128 Wn. App. at 350.

Here, the trial court heard counsels' presentation on Jeffery's criminal history in Alabama, the comparison of that history to Washington felonies, and the State's summary of the offender score, to which defense counsel did not object, leading to an assigned offender score of "5." At the end, the court stated "as far as the comparability analysis, I agree with [the] analysis of the State as far

7

as the comparability," which neither counsel responded to. While pointing out that the State "provided a large amount of material relating to [Jeffery's] purported convictions," to which Jeffery did not object, Jeffery did not explain why the trial court "utterly fairly [sic] to conduct the required on-the-record comparability analysis," other than relying on Labarbera, which as discussed supra, does not support his position. "We will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

The trial court conducted a sufficient comparability analysis of Jeffery's out-of-state convictions.

We affirm.

Bri, J.

WE CONCUR:

Birk, J.                              Mann, J.