IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38911-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL S. BURNETT, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Daniel Burnett Jr.[1] was charged with felony violation of a court

order, residential burglary, and two counts of harassment. A jury found him guilty of

felony violation of a court order and residential burglary and acquitted him of one count

of harassment.[2]

Mr. Burnett appeals, alleging he was afforded ineffective assistance of counsel, the

court miscalculated his offender score, his additional terms of community custody were

not authorized by statute, and various fees and assessments were improperly imposed on

him.

We affirm the convictions and remand for resentencing.

---

[1] Daniel Burnett Jr., is referred to as Mr. Burnett for clarity.
[2] The second count of harassment was earlier dismissed on the State's motion.

BACKGROUND

Daniel Burnett Sr. is the father of Mr. Burnett. Mr. Burnett Sr. lived at his home with Angel Russell, who provided care and companionship to him. Mr. Burnett had previously provided care for his father and formerly resided at the home along with Ms. Russell. In the past, Ms. Russell had a good relationship with Mr. Burnett and had considered him a friend. According to Ms. Russell, when Mr. Burnett consumed alcohol "[h]e throws a fit, he gets mad, you know, he gets mean . . . he gets angry." Rep. of Proc. (RP) at 266-67. Due to Mr. Burnett's threats and aggressive behavior toward Ms. Russell, in 2020 she petitioned for, and was granted, a domestic violence no-contact order against Mr. Burnett. The no-contact order required Mr. Burnett to "not knowingly enter, remain, or come within 200 feet of the protected person [Ms. Russell], the residence, school, workplace of the protected person." Ex. P-1, at 1.

At some point after Ms. Russell obtained the domestic violence no-contact order, Mr. Burnett began living in a trailer on Mr. Burnett Sr.'s property. On January 20, 2021, police were called to the home of Mr. Burnett Sr. Mr. Burnett had been drinking alcohol, entered the home of Mr. Burnett Sr., was demanding that Ms. Russell leave, and was making threatening statements to her.

Upon observing law enforcement's arrival, Mr. Burnett left the residence and made his way back to the trailer. Law enforcement spoke to Ms. Russell who informed

2

them of the domestic violence no-contact order. After a brief search, officers located Mr. Burnett at the trailer that they estimated was less than 200 feet from Mr. Burnett Sr.'s home. Officers attempted to contact Mr. Burnett at the trailer by calling his name from outside but he did not initially respond.

After a few minutes, Mr. Burnett came to the door of the trailer and spoke with officers. He denied there had been any dispute with Ms. Russell that night. Officers placed Mr. Burnett under arrest for violating the no-contact order. Upon being detained, Mr. Burnett became "disorderly, [both] verbally and physically." RP at 213.

By information, Mr. Burnett was charged with residential burglary, felony violation of a court order, and two counts of harassment. Each of the charges alleged the crime was committed against family or household members.

At trial, Ms. Russell testified that Mr. Burnett was inside Mr. Burnett Sr.'s home when she arrived. She testified that Mr. Burnett had been drinking alcohol and was screaming at both she and Mr. Burnett Sr. Ms. Russell stated that Mr. Burnett told her, "I'm gonna get you," "I want you out of here. You leave. You don't belong here. This is my house." RP at 269. She testified that Mr. Burnett "probably" told her he was going to kill her. RP at 271. Ms. Russell told police she was afraid Mr. Burnett might carry out his threat in his drunken state. Ms. Russell testified that in the past, he had thrown a large rock through her window when he was drunk.

3

Asotin County Sheriff's Deputy Nathan Conley testified that Mr. Burnett's speech was "[s]lurred" and his coordination was "poor." RP at 211. Deputy Conley testified that, upon contacting Mr. Burnett at the trailer, he noticed an "overwhelming" smell of metabolized alcohol and Mr. Burnett had "[b]lood shot watery eyes, droopy eyelids, [and a] flushed facial appearance." RP at 211. Deputy Brad Peters testified Mr. Burnett "appeared highly intoxicated." RP at 323.

## PROCEDURE

To convict Mr. Burnett of felony violation of a court order, the State was required to prove he had been twice previously convicted of violating the provisions of a court order. Mr. Burnett did not stipulate to his convictions so, to prove that element, the State submitted certified copies of Mr. Burnett's previous judgments and sentences showing convictions for violating no-contact orders. Exhibit P-3 listed Mr. Burnett's criminal history, which included convictions for second degree assault, fourth degree assault, unlawful possession of a firearm, and harassment. Mr. Burnett's counsel did not object to the inclusion of his criminal history in the exhibit.

Due to the State being unable to locate a witness, it moved to dismiss one of the two counts of harassment. Later, the jury acquitted Mr. Burnett of the remaining count of harassment and convicted him of residential burglary and felony violation of a court order. The jury returned a special verdict finding Mr. Burnett and Ms. Russell were members of the same household.

4

At sentencing, the court found Mr. Burnett's offender score was 11 for the residential burglary conviction and 10 for the felony violation of a court order conviction. Over the State's objection, the court imposed a prison-based drug offender sentencing alternative (DOSA) consisting of 36.75 months in confinement and 36.75 months of community custody. Should Mr. Burnett be terminated from the DOSA, the court ordered an additional term of 12 months of community custody on each count. The court also imposed a fine and various assessments.

Mr. Burnett timely appeals.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL—VOLUNTARY INTOXICATION DEFENSE

Mr. Burnett argues he was afforded ineffective assistance of counsel because his attorney did not pursue a voluntary intoxication defense. We disagree.

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Ineffective assistance of counsel claims are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

To succeed on an ineffective assistance of counsel claim, a defendant bears the burden of showing (1) that his or her counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

A defendant alleging ineffective assistance of counsel bears the burden of showing deficient representation. *McFarland*, 127 Wn.2d at 335. In reviewing the record, "Courts engage in a strong presumption counsel's representation was effective." *Id.* The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). When counsel's conduct can be characterized as a legitimate trial strategy or tactic, their performance is not deficient. *Kyllo*, 166 Wn.2d at 863.

Even if a defendant can show counsel's performance was deficient, they must also affirmatively prove prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). This requires more than simply showing that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052,

6

80 L. Ed. 2d 674 (1984).  A defendant demonstrates prejudice by showing that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

Mr. Burnett claims his counsel was ineffective for failing to advance a voluntary intoxication defense.  The State concedes there was evidence that Mr. Burnett had been consuming alcohol and that he displayed the outward appearance of intoxication. However, the State argues Mr. Burnett could not meet all of the requirements for a voluntary intoxication defense and, assuming he could, the failure to request the defense did not prejudice him.  We agree.

RCW 9A.16.090 provides:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his or her intoxication may be taken into consideration in determining such mental state.

A criminal defendant is entitled to a voluntary intoxication defense if, "(1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) the defendant presents evidence that the drinking affected his or her ability to acquire the required mental state." *State v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992) (footnote omitted).  "'[I]t is well settled that to secure an intoxication

7

instruction in a criminal case there must be substantial evidence of the effects of alcohol on the defendant's mind or body.'" *Id.* (alteration in original) (quoting *Safeco Ins. Co. of Am. v. McGrath*, 63 Wn. App. 170, 179, 817 P.2d 861 (1991)). Evidence of drinking alone is insufficient to warrant the voluntary intoxication instruction. *State v. Gabryschak*, 83 Wn. App. 249, 253, 921 P.2d 549 (1996).

Here, both the residential burglary and the felony violation of a court order charges included a particular mental state. To convict Mr. Burnett of residential burglary, the State was required to prove he entered or remained in the dwelling "with the intent to commit a crime against a person or property therein." CP at 198. To convict Mr. Burnett of the felony violation of a court order charge, the State was required to prove he "knowingly" violated the order. CP at 204. As the State concedes, there was substantial evidence Mr. Burnett had been consuming alcohol. Deputy Conley testified Mr. Burnett's speech was "slurred" and his coordination was "poor" while Deputy Peters testified Mr. Burnett "appeared highly intoxicated." RP at 211, 323. However, Mr. Burnett has not shown that his consumption of alcohol affected his ability to form the requisite mental state for either charge.

In *Gabryschak* this court concluded that the trial court did not err when it rejected Gabryschak's request for a voluntary intoxication defense. In that case, an officer

8

testified that Gabryschak was "very intoxicated" and his mother testified that he was "intoxicated" and too drunk to drive. 83 Wn. App. at 253. However, Gabryschak responded to officers' requests, and he even tried to break and run when arrested by officers "indicating that he was well aware that he was under arrest." *Id.* at 254-55. Consequently, this court affirmed the trial court's decision to deny him a voluntary intoxication instruction. *Id.* at 255.

Similar to the facts in *Gabryschak*, Mr. Burnett's actions demonstrated he was aware of his situation and able to engage in goal-oriented behavior. When the law enforcement officers arrived at Mr. Burnett Sr.'s residence, Mr. Burnett fled to his trailer and hid. Mr. Burnett possessed the awareness to deny that there had been any dispute with Ms. Russell and, when he realized he was being arrested, became verbally and physically disorderly toward the law enforcement officers. Mr. Burnett has not shown that his counsel was deficient for failing to pursue a voluntary intoxication defense nor that the court would have even granted a request for the instruction if it were made.

Assuming Mr. Burnett was entitled to a voluntary intoxication jury instruction and the trial court would have granted his request for the instruction, Mr. Burnett has not shown that his counsel's failure to pursue the instruction prejudiced him. A voluntary intoxication jury instruction provides:

> *No act committed by a person* while in a state of voluntary intoxication *is less criminal by reason of that condition.* However, in determining whether the defendant [acted] [or] [failed to act] with (fill in the requisite mental state), evidence of intoxication may be considered.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.10, at 302 (5th ed. 2021) (emphasis added). The instruction informs the jury that being intoxicated does not make one's actions less criminal nor is it an excuse for criminal conduct. Further, a voluntary intoxication defense could be interpreted by the jury as a concession that Mr. Burnett *did* commit the crimes but that he was simply too intoxicated to do them with "intent" or "knowingly." If the jury failed to believe Mr. Burnett was too intoxicated to form the requisite intent, the instruction could be seen as a concession he committed the acts he was accused of and would therefore assuredly lead to convictions.

Mr. Burnett failed to show that his trial counsel was deficient for failing to pursue a voluntary intoxication defense or that the there is a reasonable probability that the outcome of the proceedings would have been different had the jury been instructed on voluntary intoxication.

II.     INEFFECTIVE ASSISTANCE OF COUNSEL—CRIMINAL HISTORY

Mr. Burnett next contends his attorney's failure to request his criminal history be redacted from exhibit P-3 was deficient and prejudicial. In this regard, the State concedes

trial counsel's performance was deficient, but denies it was prejudicial.  We agree with the State.

The inadmissible information contained in exhibit P-3 consisted of Mr. Burnett's convictions for assault, unlawful possession of a firearm, and harassment.  The assault convictions were listed by degree and the unlawful possession of a firearm charge was identified by the acronym "UPFA."  Ex. P-3, at 1.  Inclusion of the harassment conviction would have been the most harmful given Mr. Burnett was charged with harassment at trial.  However, after the jury considered exhibit P-3, they acquitted Mr. Burnett of the harassment charge.  Had the jury had improperly considered Mr. Burnett's criminal history, it is unlikely it would have found him not guilty of the harassment charge.

Further, the jury was aware of Mr. Burnett's prior acts of violence because Ms. Russell testified about them at trial.  *See State v. Ragin*, 94 Wn. App. 407, 413, 972 P.2d 519 (1999) (in a harassment prosecution, prior violent incidents are admissible to show the reasonableness of the victim's fear).  Thus, the prior assault charges would have come as no surprise to the jury.  Finally, the unlawful possession of a firearm charge was only identified as "UPFA."  Unless a juror had specialized knowledge of acronyms for crimes, it is unlikely that he or she would have known what UPFA meant.

Mr. Burnett fails to show he was prejudiced by the inclusion of his criminal history in exhibit P-3.  Specifically, Mr. Burnett has not shown there is a reasonable

probability that but for trial counsel's poor performance the outcome of the proceedings would have been different. Mr. Burnett did not receive ineffective assistance of counsel.

III.     OFFENDER SCORE

Mr. Burnett argues that his offender score was miscalculated, necessitating a resentencing. The State concedes and we agree.

A sentencing court's offender score calculation is reviewed de novo. *State v. McCraw*, 127 Wn.2d 281, 289, 898 P.2d 838 (1995). "A defendant may challenge an offender score calculation for the first time on appeal because the sentencing court acts without statutory authority when it imposes a sentence based on a miscalculated offender score." *State v. Jackson*, 150 Wn. App. 877, 891, 209 P.3d 553 (2009) (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002); *State v. McDougall*, 132 Wn. App. 609, 612, 132 P.3d 786 (2006)).

Mr. Burnett's offender score was calculated at 11 points for the residential burglary conviction and 10 points for the felony violation of a court order conviction. Properly calculated, Mr. Burnett's offender score should have been 8 points for each count.

There are special scoring rules for convictions carrying a domestic violence designation. RCW 9.94A.525 states:

12

(21) If the present conviction is for a felony domestic violence offense where domestic violence as defined in RCW 9.94A.030 was pleaded and proven, count priors as in subsections (7) through (20) of this section; however, count points as follows:

*(a) Count two points for each adult prior conviction where domestic violence as defined in RCW 9.94A.030 was pleaded and proven after August 1, 2011, for any of the following offenses: A felony violation of a no-contact or protection order (RCW 7.105.450 or former RCW 26.50.110)*, felony Harassment (RCW 9A.46.020(2)(b)), felony Stalking (RCW 9A.46.110(5)(b)), Burglary 1 (RCW 9A.52.020), Kidnapping 1 (RCW 9A.40.020), Kidnapping 2 (RCW 9A.40.030), Unlawful imprisonment (RCW 9A.40.040), Robbery 1 (RCW 9A.56.200), Robbery 2 (RCW 9A.56.210), Assault 1 (RCW 9A.36.011), *Assault 2 (RCW 9A.36.021)*, Assault 3 (RCW 9A.36.031), Arson 1 (RCW 9A.48.020), or Arson 2 (RCW 9A.48.030);

(b) Count two points for each adult prior conviction where domestic violence as defined in RCW 9.94A.030 was pleaded and proven after July 23, 2017, for any of the following offenses: Assault of a child in the first degree, RCW 9A.36.120; Assault of a child in the second degree, RCW 9A.36.130; Assault of a child in the third degree, RCW 9A.36.140; Criminal Mistreatment in the first degree, RCW 9A.42.020; or Criminal Mistreatment in the second degree, RCW 9A.42.030;

. . . .

*(d) Count one point for each adult prior conviction for a repetitive domestic violence offense as defined in RCW 9.94A.030, where domestic violence as defined in RCW 9.94A.030, was pleaded and proven after August 1, 2011.*

(Emphasis added.)

Mr. Burnett has two prior felony domestic violence convictions: one for violation of a no-contact or protection order and one for second degree assault. However, both were sentenced prior to August 1, 2011, and should have been counted as 1 point each.

13

RCW 9.94A.525(21)(a); RCW 9.94A.525(7).  Further, Mr. Burnett has three prior

convictions for "[r]epetitive domestic violence offenses," which count as 1 point each, for

a total of 3 points.  RCW 9.94A.525(21)(d); RCW 9.94A.030(42) (two fourth degree

assault convictions sentenced in 2018 and a gross misdemeanor restraining order

conviction sentenced in 2018).  There is also a conviction for unlawful possession of a

firearm which counts as 1 point.  RCW 9.94A.525(7).  With no other countable

convictions, Mr. Burnett's offender score was 6 on each count.  In addition to this score,

each current offense adds an additional 2 points to the other offense because domestic

violence was pleaded and proved.  RCW 9.94A.525(21)(a).  Accordingly, Mr. Burnett's

total offender score is 8 points on each count.

With an offender score of eight on each count, Mr. Burnett's standard sentencing

range for the residential burglary conviction is reduced from 63-84 months to 53-70

months.  RCW 9.94A.510; RCW 9.94A.515 (seriousness level IV).  The standard

sentencing range for the violation of the no-contact order conviction remains at the

statutory maximum of 60 months.  RCW 9.94A.510 (grid); RCW 9.94A.515 (seriousness

level V); RCW 9A.20.021(1)(c) (statutory maximum of 60 months for class C felony);

former RCW 26.50.110(5) (2018) (felony violation of no-contact order is a class C

felony).  With the decreased standard sentencing range on Mr. Burnett's residential

burglary conviction, his DOSA in-custody and out-of-custody terms must also be reduced. RCW 9.94A.662(2) (prison-based DOSA sentences are set at one-half the midpoint of the standard range of confinement and community custody terms).

IV.    COMMUNITY CUSTODY TERMS

Mr. Burnett argues that the trial court erred when it ordered an additional 12 months of community custody should he be terminated from the DOSA. The State concedes this was error. We agree the trial court's imposition of the additional terms of community custody exceeded statutory authority and should be struck from the judgment and sentence.

"A trial court may impose a sentence that is only authorized by statute." *In re Postsentence Review of Leach*, 161 Wn.2d 180, 184, 163 P.3d 782 (2007). An unauthorized sentence may be addressed for the first time on appeal. *State v. Julian*, 102 Wn. App. 296, 304, 9 P.3d 851 (2000). Whether a trial court exceeded its statutory authority when sentencing a criminal defendant is an issue of law that we review de novo. *State v. Murray*, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003).

RCW 9.94A.662(2)(e) provides that a prison-based DOSA "shall include . . . [a] term of community custody pursuant to RCW 9.94A.701 to be imposed upon the failure to complete or administrative termination from the special [DOSA] program." Further,

15

"[a]n offender who fails to complete the program or who is administratively terminated from the program shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court." RCW 9.94A.662(4).

RCW 9.94A.701(4) states that if an offender is sentenced to a DOSA, then the court shall impose community custody as provided in RCW 9.94A.660. However, RCW 9.94A.701(10) specifies that "[t]he term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021."

Section 4.8 of Mr. Burnett's judgment and sentence requires him to serve an additional 12 months of community custody on each count should he be terminated from the DOSA. Felony violation of a court order is a crime against persons and is generally subject to 12 months of community custody. RCW 9.94A.411(2); RCW 9.94A.701(3)(a). However, should Mr. Burnett be terminated from the DOSA, his standard sentencing range is the statutory maximum (60 months). RCW 9.94A.662(4). Any additional community custody would exceed the statutory maximum sentence. Turning to Mr. Burnett's conviction for residential burglary, it is not a crime against persons as defined in RCW 9.94A.411(2). Accordingly, it does not qualify for a term of

16

community custody under RCW 9.94A.701. *In re Postsentence Rev. of Childers*, 135 Wn. App. 37, 40, 143 P.3d 831 (2006). Neither of Mr. Burnett's convictions qualify for an additional term of community custody should he be terminated from the DOSA.

V.　DEPARTMENT OF CORRECTIONS (DOC) SUPERVISION FEE

Mr. Burnett argues, and the State concedes, that the court-ordered DOC supervision fee should be struck due to a recent change in the law. We agree and remand to have the DOC supervision fee struck from the judgment and sentence.

Under former RCW 9.94A.703(2)(d) (2021), unless waived by the court, the "court shall order an offender to: . . . (d) Pay supervision fees as determined by the department." However, effective July 1, 2022, the legislature amended the community custody statute to remove the supervision fees provision. *See* SECOND SUBSTITUTE H.B. 1818, 67th Leg., Reg. Sess. (Wash. 2022); RCW 9.94A.703. Recently, this court held that a statutory amendment should apply to a defendant's case that was pending on direct appeal. *State v. Wemhoff*, 24 Wn. App. 2d 198, 519 P.3d 297 (2022) (Laws of 2022, chapter 29, applies to all cases on direct appeal as of July 1, 2022.); *State v. Rivera*, No. 38654-6-III, slip op. at 3 (Wash. Ct. App. Mar. 16, 2023) (unpublished), https://www.courts.wa .gov/opinions/pdf/386546_unp.pdf. Because Mr. Burnett's case is pending on appeal and RCW 9.94A.703 has been amended, the trial court is directed to strike the DOC supervision fees from Mr. Burnett's judgment and sentence.

17

VI.    $15 DOMESTIC VIOLENCE PROTECTION ORDER ASSESSMENT

Mr. Burnett argues the trial court lacked statutory authority to order the $15 domestic violence protection order assessment. He asserts the domestic violence no-contact order issued against him was imposed under chapter 10.99 RCW, while the assessment is authorized under former RCW 26.50.110(1)(b)(ii) (2020), meaning the assessment may only be levied on violations of chapter 26.50 RCW. The State responds that this issue is being improperly raised for the first time on appeal. Alternatively, the State claims the assessment was authorized by statute. We elect to address the claimed error for the benefit of the trial court and to avoid a future appeal. We affirm.

The meaning of a statute is a question of law, which we review de novo. *State v. Sweat*, 180 Wn.2d 156, 159, 322 P.3d 1213 (2014). In interpreting statutory provisions, the primary objective is to ascertain and give effect to the intent and purpose of the legislature in creating the statute. *State v. Watson*, 146 Wn.2d 947, 954, 53 P.3d 66 (2002). To determine legislative intent, we first look to the plain language of the statute. *Id*. "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Dep't of Corr. v. McKee*, 199 Wn. App. 635, 645, 399 P.3d 1187 (2017) (internal quotation marks omitted) (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)). If a statute is unambiguous after considering its plain meaning, our inquiry ends. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d

516, 526, 243 P.3d 1283 (2010).  "We must . . . avoid an interpretation that results in

unlikely or strained consequences."  *Dep't of Transp. v. City of Seattle*, 192 Wn. App.

824, 838, 368 P.3d 251 (2016) (citing *Broughton Lumber Co. v. BNSF Ry. Co.*, 174

Wn.2d 619, 635, 278 P.3d 173 (2012)).

> Former RCW 26.50.110(1)(b)(ii) (2020) stated:
>
> (1)(a) Whenever an order is granted under this chapter, chapter 7.92, 7.90, 9A.40, 9A.46, 9A.88, 9.94A, *10.99*, 26.09, 26.10, 26.26A, 26.26B, or 74.34 RCW, any temporary order for protection is granted under chapter 7.40 RCW pursuant to chapter 74.34 RCW, there is a valid foreign protection order as defined in RCW 26.52.020, or there is a valid Canadian domestic violence protection order as defined in RCW 26.55.010, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
>
> > . . . .
>
> (b) Upon conviction, and in addition to any other penalties provided by law, the court:
>
> > . . . .
>
> (ii) *Shall impose a fine of fifteen dollars, in addition to any penalty or fine imposed, for a violation of a domestic violence protection order issued under this chapter.*  Revenue from the fifteen dollar fine must be remitted monthly to the state treasury for deposit in the domestic violence prevention account.

(Emphasis added) (footnote omitted).  The no-contact order that Mr. Burnett violated was

issued pursuant to RCW 10.99.040 and RCW 10.99.050.  Ex. P-1, at 1.  The no-contact

order itself referenced chapter 26.50 RCW:

> Warning: Violation of the provisions of this order with actual notice of its terms is a criminal offense *under chapter 26.50 RCW* and will subject a violator to arrest. . . .
>
> . . . .
>
> Willful violation of this order is *punishable under RCW 26.50.110*.

Ex. P-1, at 1-2 (boldface omitted) (emphasis added).

Mr. Burnett argues that the language of the statute is clear on its face and the $15 assessment may *only* be imposed for violations under chapter 26.50 RCW. However, it is unclear whether the legislature intended the $15 assessment to apply to orders granted under the chapters listed in former RCW 26.50.110(1)(a) or only to orders issued under chapter 26.50 RCW. When the history of the codification of the $15 assessment is considered, it is clear that the assessment was intended to be imposed for violations of no-contact orders beyond those issued under chapter 26.50 RCW.

The $15 assessment first appeared in former RCW 10.99.080(1) (2015). In 2017 the legislature moved the $15 assessment to RCW 26.50.110, the statute that provided the procedures by which all criminally enforceable orders were enforced. Recently, the legislature moved the $15 domestic violence protection order violation assessment to RCW 7.105.450(1)(b)(ii). The language of the statute remains the same, stating that the $15 penalty shall be imposed for violations "under this chapter."

When one considers that former RCW 26.50.110(1)(a) explicitly referenced chapter 10.99 RCW, in addition to the history of the codification of the $15 assessment, it

20

is clear that it was not meant to be exclusive to violations of chapter 26.50 RCW.

Further, the order Mr. Burnett violated explicitly referenced chapter 26.50 RCW. Thus,

the $15 assessment was authorized.

### VII. $100 DOMESTIC VIOLENCE ASSESSMENT

Mr. Burnett alleges the trial court abused its discretion when it mistakenly

believed imposition of the $100 domestic violence assessment was mandatory. The State

argues this issue is improperly raised for the first time on appeal. Again, for the benefit

of the trial court and to avoid a second appeal, we elect to address the claimed error and

affirm the trial court.

Trial courts are afforded discretion to operate within a range of acceptable choices.

*State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*,

79 Wn. App. 786, 793, 905 P.2d 922 (1995)). However, a court's failure to exercise

discretion is itself an abuse of discretion. *In re Adoption of A.W.A.*, 198 Wn. App. 918,

922, 397 P.3d 150 (2017). Likewise, a court abuses its discretion when its decision is

manifestly unreasonable or based on untenable grounds. *State v. Allen*, 159 Wn.2d 1, 10,

147 P.3d 581 (2006).

Although the trial court was mistaken in concluding the $100 domestic violence

assessment was required to be imposed, thereby abusing its discretion, the error was

harmless. In believing the $100 domestic violence assessment was mandatory, the trial

court reduced Mr. Burnett's fine from $1,000 to $500, offsetting any detriment to him.

VIII.  INEFFECTIVE ASSISTANCE OF COUNSEL—$100 DOMESTIC VIOLENCE
ASSESSMENT

Mr. Burnett argues that his trial counsel was ineffective for failing to object to or inform the court of its discretion in imposing the $100 domestic violence assessment. The State responds that counsel was not ineffective and, in any event, Mr. Burnett is unable to show any prejudice.  We agree with the State.

"If a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.'"  *State v. Vasquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)).  "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'"  *Id.* (quoting *Crow*, 8 Wn. App. 2d at 508).

Here, the court incorrectly believed the $100 domestic violence assessment was mandatory.  RP at 461-62; RCW 10.99.080(1) ("All superior courts . . . *may* impose a penalty assessment not to exceed one hundred dollars on any adult offender convicted of a crime involving domestic violence." (Emphasis added)).  Mr. Burnett's counsel failed to object or otherwise inform the court of its discretion in imposing the assessment. However, this was not deficient.

Prior to the discussion of the legal financial obligations (LFOs), Mr. Burnett's counsel had successfully convinced the court to grant Mr. Burnett a prison-based DOSA over the State's opposition. Moreover, in recognition of some of the assessments, the trial court reduced the $1,000 fine to $500. RP at 462. The trial court explained, "I can't—waive the $100.00 DV or the $15.00 DV or that CDC, but I'm reducing the fine from $1,000.00 to $500.00." RP at 461-62.

It was reasonable for Mr. Burnett's counsel to decline to object to the $100 domestic violence assessment fee under the totality of the circumstances. Assuming Mr. Burnett's counsel was deficient for failing to inform the court of its discretion in imposing the $100 domestic violence assessment fee, he cannot show prejudice. The court, if it was so inclined, could have waived the entire $1,000 fine. RCW 9A.20.020. Instead, the court chose to reduce it to $500, demonstrating it did not intend to waive all the discretionary LFOs.

Mr. Burnett bears the burden of showing that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *See McFarland*, 127 Wn.2d at 334-35. He has failed to do so.

IX.     $500 VICTIM PENALTY ASSESSMENT

Mr. Burnett argues that the victim penalty assessment imposed on him should be struck from the judgment and sentence.  He argues that amended RCW 7.68.035, which prohibits the victim penalty assessment from being imposed on an indigent defendant, applies prospectively to his case.  We agree.

In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), which amends RCW 7.68.035 to prohibit the imposition of the victim penalty assessment on indigent defendants.  RCW 7.68.035 (as amended); H.B. 1169,[3] at 2 ("The court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3).").  H.B. 1169 took effect on July 1, 2023.  Amended RCW 7.68.035 provides:

> (5) Upon motion by a defendant, the court shall waive any crime victim penalty assessment imposed prior to the effective date of this section if:
> . . . .
> (b) The person does not have the ability to pay the penalty assessment.  A person does not have the ability to pay if the person is indigent as defined in RCW 10.01.160(3).

Generally, statutes apply prospectively from their effective date unless the legislature indicates it intends otherwise.  *State v. Humphrey*, 139 Wn.2d 53, 55, 983 P.2d 1118 (1999).  However, a newly enacted statute generally applies to all cases pending on

---

[3] https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bills/House%20Passed%20Legislature/1169-S.PL.pdf?q=20231017132251.

direct appeal that are not yet final. *State v. Jefferson*, 192 Wn.2d 225, 246, 429 P.3d 467 (2018) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)); *State v. Pillatos*, 159 Wn.2d 459, 470, 150 P.3d 1130 (2007).

Mr. Burnett's case is pending on direct appeal and not yet final. Although the trial court found, "that the Defendant has the ability or likely future ability to pay the legal financial obligations imposed herein," the court later found him indigent. *See* CP at 248, 284-286. Based upon this matter being remanded for a resentencing, any perceived errors related to the imposition of LFOs are harmless. At resentencing, the court is directed to consider Mr. Burnett's current and future ability to pay any LFOs.

## CONCLUSION

Mr. Burnett was not afforded ineffective assistance of counsel; we affirm his convictions. We remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.

25